# Cases

MARGARET FITCHETT, as Administratrix, etc., of GEORGE H. FITCH-
ETT, Deceased, Respondent, v. THOMAS J. MURPHY and Others,
Appellants.

*Corporation — action to restrain the payment of exorbitant salaries to officers — a
demand that the corporation sue is a prerequisite — right to divide profits by the
giving of salaries — the right of action does not pass to an administrator — the
suit must be by a stockholder — power of the court to fix salaries — accounting is
the proper remedy.*

In an action brought by the administratrix of a deceased stockholder of a cor-
poration to restrain the payment of alleged exorbitant salaries to certain other
stockholders acting as officers thereof, it appeared that salaries were originally
voted to all the stockholders as a method of dividing the earnings and not as
compensation for services, the stockholders being paid in proportion to their
holdings of stock. Subsequently the salaries were continued to all the stock-
holders (they being continued as officers) except one, the plaintiff's intestate,
who was not elected an officer of the corporation.

*Held,* that the directors of the corporation had no right to vote salaries to one
another as mere incidents to their office;

That, in the absence of an averment in the complaint, or evidence in the record,
that the plaintiff or her intestate ever applied to the corporation for redress or
to bring an action similar to the present one, and of the refusal thereof on the
part of the corporation, or of facts obviating the necessity of such demand
and refusal, the plaintiff was not in a position to maintain the present action;

That the alleged misconduct of the defendants during her intestate's life did not
give to him any personal claim which, as property, passed to his administra-
trix, who, in order to maintain an action of this kind, must be a stockholder
at the time of the institution thereof, the right of action being incident to the
ownership of the stock;

That it was not within the power of the court to fix a gross sum to be divided as
salaries among the directors and officers of the corporation;

That were the action maintainable, the judgment should have compelled an
accounting of the moneys received by the defendants from the date of their
exclusion of the plaintiff's intestate from participation in the affairs of the
corporation.

APPEAL by the defendants, Thomas J. Murphy and others, from
a judgment of the Supreme Court in favor of the plaintiff, entered
in the office of the clerk of the county of Kings on the 15th day of
March, 1899, upon the decision of the court rendered after a trial
at the Kings County Special Term, with notice of an intention to
bring up for review upon such appeal an order bearing date the 15th
day of March, 1899, granting the plaintiff an additional allowance.

*Charles F. Brown,* for the appellants.

*Hugo Hirsh,* for the respondent.

GOODRICH, P. J.:

The action is brought by a minority stockholder in the American
Bill Posting Company of the city of Brooklyn, to restrain the
defendants Murphy, Link and Fay from paying to themselves cer-
tain salaries which are claimed to be exorbitant. The testimony
shows that prior to August, 1894, Murphy was engaged in the bill
posting business in Brooklyn, having a somewhat valuable plant,
consisting of bill boards, leases, fences, advertising privileges, and
regular custom therein. George H. Fitchett, the plaintiff's intestate,
and the defendants Link and Fay, together with one Coutrier, had
organized a similar business in opposition to Murphy. In August
the parties came together to form a corporation for the purpose
of taking over the business of both parties by organizing the
defendant corporation. The certificate of incorporation shows that
the corporation was organized with a capital stock of $9,000 (90
shares of the par value of $100 each). Fitchett, Murphy and Link,
were named as directors. The stock was subscribed for, Murphy
taking 30 shares and the other four persons each 15 shares.
At the first meeting of the directors, in September, 1894, Fitchett
was elected president; Coutrier, vice-president; Murphy, treasurer;
Link, manager, and Fay, secretary. The salaries of Fitchett, as
president; Coutrier, as vice-president; Fay, as secretary; and Link,

as manager, were fixed at $50 per week, and that of Murphy, as treas-
urer and director in general, at $100 per week.   The same persons
remained officers of the corporation until April 5, 1897, when Mur-
phy, Coutrier and Link were elected directors.   These directors, at
their first meeting, elected Murphy, president; Coutrier, vice-presi-
dent; Link, treasurer and manager, and Fay, secretary; and fixed
the salary of Murphy at $100 per week, that of Link at $80, and of
Fay at $50.   Subsequent to the last meeting of the directors, Cou-
trier sold his stock to one Hyde, and, as his office of director was
vacated by such sale, the directors, on May 1, 1897, elected Fay as
his successor; and the salaries of Murphy, as president, and Link,
as general manager, were continued and a salary of $50 per week
voted to Link, as secretary and solicitor.   No salary was voted to
Fitchett.   The minutes of the meeting show that each of these
three persons refrained from voting upon the question of his own
salary.   Fitchett died on June 8, 1897.

The summarized accounts of the company's affairs show the fol-
lowing facts :

*Summary of Profit and Loss Account of the American Bill Posting
Company, August 21, 1894, to August 26, 1898.*

| YEAR ENDING AUGUST. | Income. | Expenses. | Profit from operations. | Salaries of officers. | Net profits. |
|---|---|---|---|---|---|
| 1895 ......... | $48,301 81 | $27,588 51 | $20,713 30 | $15,000 00 | $5,713 30 |
| 1896 ......... | 53,690 47 | 33,428 53 | 20,261 94 | 15,000 00 | 5,261 94 |
| 1897 ......... | 67,450 19 | 39,119 57 | 28,330 62 | 14,270 00 | 14,060 62 |
| 1898 .... .... | 66,089 56 | 42,537 18 | 23,552 38 | 12,190 00 | 11,362 38 |
| Total .... | $235,532 03 | $142,673 79 | $92,858 24 | $56,460 00 | $36,398 24 |

The court found, as matter of fact, that the salaries were voted
and paid as a method of division of earnings and not as compensa-
tion for services, and that under this method all the stockholders were
paid in proportion to their holdings of stock, that these payments
were not for services to be rendered and that services were not
rendered as an equivalent for them.   The judgment provided that
the defendants Murphy, Link and Fay refund to the defendant cor-
poration the sums of money drawn by them respectively for salaries
since the date of the trial (January 27, 1899), and that thereafter

the corporation be authorized to pay such sums for salaries for its officers as it may deem proper, not to exceed in the aggregate $5,500 per year, which sum was declared to be a fair compensation for all such officers, including their expenses in defending this action, and was to be divided among the officers according to their actual services in the company, as they may decide ; and the company was restrained from paying any expense incurred in the defense of the suit. From this judgment the defendants appeal.

This is one of those cases where the majority of stockholders have entered into a combination to control the affairs of the corporation for their own benefit and in fraud of the rights of the minority. Such a combination will always be rebuked by a court of equity. It is not necessary to restate well-settled principles upon this subject, and, therefore, no reference is made to authorities. Here is a corporation with a capital of $9,000, which has paid to its stockholders and officers, under the guise of salaries, an average of $14,000 per year for four years, when it appears that most of the work was done by one of the persons receiving salary, in addition to which the company has accumulated a surplus of more than $36,000, constituting a clear profit on the business of, approximately, $75,000. Nothing appears in the record to show a probable diminution of the profits, and in these profits the stockholders have a right to a proportionate share. No action by the directors, and no combination among any of them can be permitted to invade the rights of the plaintiff and the minority stockholders in the corporation.

So long as all the parties in interest, incorporators, stockholders, directors and officers, assented to the scheme for the distribution of assets by the payment of salaries, the plan was unobjectionable ; and that state of affairs continued until the original plan for the personnel of the directors was changed in April, 1897, and a change was made in the officers and the salary of Fitchett was suspended. From that time the actions of the defendants must be regarded as hostile to the interests of Fitchett. It is not difficult to discover a plan to "freeze out" Fitchett and exclude him from all benefits, except such as might be derived from the payment of dividends. The only dividend ever declared by the corporation was one of twelve and one-half per cent, in 1898. Meanwhile, Murphy, Link and Fay continued to receive their salaries. It does not appear that they ren-

dered any services as officers, sufficient to justify the large salaries paid them, and the payment of such salaries, voted by the defendants to themselves, is not justified by any evidence of services rendered in their offices.

The learned court, in its opinion, correctly held that " Directors of a corporation have no right to vote salaries to one another as mere incidents to their office as was done here. They are not debarred becoming employees of the incorporation and they are entitled to a reasonable compensation for their services as such. But as in fixing their compensation they are in the position as trustees dealing with themselves in respect of their trusts, their action is subject to question by the stockholders or to review by the court of equity at the suit of a stockholder. In case of a large board of directors the fixing of a salary of one of their number for prescribed services might be deemed conclusive, where the influence of one employed was not a factor therein. This case is quite different."

We have stated somewhat fully our views on the facts of the controversy, because, for the reasons hereafter given, we are led to reverse the judgment. In the first place, there is no averment in the complaint or evidence in the record that the plaintiff or her intestate ever applied to the corporation for redress, or to bring an action similar to the present one. In *Flynn* v. *Brooklyn City R. R. Co.* (158 N. Y. 493) it was held that where a plaintiff, suing as a stockholder, claims that he has been defrauded of his interest in the corporate assets, the action is not for his benefit alone, but is representative in character and for the benefit of the plaintiff and all stockholders similarly situated; and that in such an action an averment of a demand to sue made upon the corporation, together with its refusal or unreasonable neglect so to do, is essential to enable the plaintiff stockholder to sue in his own name. It may be that such a demand was made, or that facts may be alleged which will obviate the necessity of such demand and refusal, but it is essential that one or the other state of facts be alleged and proved.

In the next place, there seems to be a fatal defect in the plaintiff's case, both in her pleading and in her proof. Her cause of action is derivative. Alleging misconduct of the defendants, even during her intestate's life, did not give him any personal claim which, as

property, could pass to his administratrix. To bring an action of this kind a person must be a stockholder at the time of the institution of the action. The right of action is incident to the ownership of the stock, for it is to compel a restoration of property acquired through a past wrong on the corporation, not on the stockholder individually, or to prevent future injury to the corporation, that such an action is maintainable. The allegations of the complaint are that the husband was a stockholder "up to about the 1st day of May, 1897," a period of one month before his death. It is not alleged that he was the owner and holder of the stock at the time of his decease, or that the plaintiff, as his administratrix, is such owner, nor does the plaintiff offer any testimony to supply this defect.

We are of opinion that it was not within the power of the court to fix even a gross sum to be divided as salaries among the directors and officers, for this is a matter within the powers of the directors themselves, subject, of course, to review and approval or disapproval by a court of equity. We think, also, that, instead of allowing the defendants to retain the moneys received by them between the date of Fitchett's exclusion from participation in the affairs of the company, namely, April 8, 1897, and the date of the trial, namely, June 27, 1899, the judgment should have compelled an accounting from the first date, April 8, 1897.

We do not further review the merits of the controversy than to say that the evidence seems rather meagre and unsatisfactory as a foundation for the decision of a court, which fact the trial justice appreciated. The corporation was peculiar. Its large profits accrued, probably, not only from the investment of the capital in the ordinary management of the corporation, but also, to some extent, from the individual efforts of the directors. Why the plaintiff's husband ceased to be a director does not appear. Whether he refused to perform his work, and, therefore, his associates refused to continue him in office, or whether, on the other hand, anxious and willing to work, he was excluded solely with the idea of depriving him of his interest in the profits of the corporation, is not certain on the printed evidence. On a new trial all these deficiencies may be supplied, and, we think, justice requires that disposition of the case.

For these reasons the judgment should be reversed and a new

trial granted, with leave to the plaintiff to apply at Special Term for permission to amend the pleadings in accordance with this opinion, and with costs to abide the final award of costs.

All concurred.

Judgment reversed and new trial granted, costs to abide the final award of costs. Plaintiff may have leave to apply to amend her complaint in the respects indicated in the opinion.