(43 Misc. Rep. 141.)

POLHEMUS v. POLHEMUS et al.

(Supreme Court, Special Term, Kings County.   March, 1904.)

1. CORPORATIONS—PURCHASE OF PROPERTY FROM DIRECTOR—ACTION BY STOCK-
   HOLDER TO SET ASIDE—REQUESTING DIRECTORS TO SUE.
   Where directors of a corporation sell to the corporation property be-
   longing to one of them, a stockholder, before suing the corporation and
   its directors to set aside the sale, and to require repayment to the cor-
   poration of the consideration paid, need not request the directors to sue
   in the name of the corporation for the same relief, where the delinquent
   directors are still in office.

2. SAME—PURCHASE OF PROPERTY FROM DIRECTOR—VALIDITY.
   A sale of property by a director of a corporation to the corporation is
   voidable at the instance of the corporation.

3. SAME—RIGHT OF STOCKHOLDER TO ATTACK SALE.
   Where a director of a corporation sells his own property to the cor-
   poration, the right of a stockholder to attack the sale is secondary to
   that of the directors, since his suit must be based on their fraud or
   waste, or their acts in excess of their powers, and must fail where he
   fails to show affirmatively one of these things.

Action by Elsa C. Polhemus against Horace G. Polhemus and oth-
ers to set aside a sale of property to a corporation by one of the di-
rectors thereof, and to compel a return of the consideration to the cor-
poration.   Judgment for defendants.

Defendant Horace G. Polhemus owned a printing plant and business, and
sold it to the defendant company in April, 1898, for $16,000, taking in pay-
ment 16 notes of the company for $1,000 each, payable monthly, and they
were paid as they came due.   The said Horace G. Polhemus and the other
individual defendants were the directors of the said company at the time,
and have continued to be such.   It was and is engaged in the business of
printing.   Such purchase was made by them at a meeting of such directors,
said E. Dixon Polhemus being absent.   Said director Horace G. Polhemus
was the president of the company and presided at the meeting and took part
in the question of such purchase and put the question but did not vote
thereon.   All of the other directors present voted therefor.   The plaintiff's
husband, Charles T. Polhemus, was at the time a stockholder in the com-
pany, and he died in October, 1900, leaving his stock to plaintiff.

This suit was brought in April, 1903.   The complaint alleges that the said
sale price was greatly in excess of the true value, and fraudulent, and that
the plaintiff's husband never knew of such sale, and that the plaintiff only
learned of it recently.

Weiser & Bridges, for plaintiff.

James Parker, for defendants.

GAYNOR, J.   The plaintiff was not required by law to request
the delinquent directors to bring a suit in the name of the corporation
against themselves to undo their alleged fraudulent breach of trust,
and obtain a refund of the money paid, in order to create the right to
bring a suit for that purpose herself against them and the corporation
on their refusal.   I am aware that the contrary was recently decided
in Fitchett v. Murphy, 46 App. Div. 181, 61 N. Y. Supp. 182; but that
decision was so obviously contrary to law that it is deemed inadver-
tent, and not one that bench or bar should heed as authority.   The

¶ 2.  See Corporations, vol. 12, Cent. Dig. §§ 1401, 1402, 1413, 1414.

suit there was to stop directors from spoliating the funds of the corporation by dividing them up among themselves under the guise of salaries voted by themselves to themselves, and to require them to refund what they had already unlawfully taken; and yet it was actually decided that the plaintiff could not maintain it as a stockholder because she had not first requested the delinquent directors to sue themselves, and that is declared to be the rule of law. It does not seem possible that the court could have understood that it was making such a decision, especially as one of its number had sat as trial judge in an exactly similar case. Ziegler v. Hoagland, 52 Hun, 385, 5 N. Y. Supp. 305. Of course there is not, never was, and could not be such a rule. To the very contrary, the law would not permit the directors to commit the fraud and farce of suing themselves by the corporation which they controlled as nominal plaintiff. If they attempted to do so the law would stop them. It seems scarcely seemly to discuss so plain a matter. The opinion in the Fitchett Case cites Flynn v. Brooklyn City R. Co., 158 N. Y. 493, 53 N. E. 520, as authority. The directors in office when that suit was brought were doubtless not the directors who did the wrong, but their successors, although there is nothing in the reporter's statement of the case nor in the opinion to directly reveal that fact. It may, however, have been assumed from the lapse of several years after the breach of trust before suit was brought, and the absence of any definite allegation in the complaint, that the directors in office at the time the suit was brought were the same directors who committed the breach of trust. Corning v. Barrett, 22 Misc. Rep. 241, 48 N. Y. Supp. 1013. Otherwise the decision there was an obvious misadventure. As it is reported it will no doubt continue for a generation and more to mislead those who are always satisfied with any kind of a quotation from a book. The case of Greaves v. Gouge, 69 N. Y. 154, was cited in the Flynn Case; but in the Greaves Case there were only two delinquent directors of the corporation, and the others could bring the suit against them. It is only where a majority of the directors are not delinquents that they must be asked to bring the suit, and refuse or neglect to do so, before the stockholder may sue. They make themselves delinquents and suable by such refusal or neglect. I may well forbear to cite any cases for the self-evident proposition that there is no rule of law that delinquent directors must be requested by a stockholder to bring a suit against themselves, and refuse or neglect to do so, before he may sue them. They are to be found in any digest of decisions, if it can be necessary or useful to look at them. Without the aid of books every one must know that no trustee, and no one else, for that matter, may sue himself.

It does not seem that the plaintiff can prevail, as no fraud or waste has been shown. The complaint has not been made out on that head. The rule is that a sale by a trustee to his cestui que trust, and paid for out of the trust estate, the same as a purchase by him of trust property, or any personal dealing by him with such property, is voidable at the election of the cestui que trust, without regard to whether the transaction was beneficial or otherwise, or fraudulent; and it applies to trustees of corporations. Davoue v. Fanning, 2 Johns. Ch.

252; Dodge v. Stevens, 94 N. Y. 209; Gamble v. Queens Co. Water Co., 123 N. Y. 91, 25 N. E. 201, 9 L. R. A. 527; Sage v. Culver, 147 N. Y. 241, 41 N. E. 513.

But these directors were not under a duty to avoid the purchase for the corporation unless it was fraudulent or wasteful, and the plaintiff introduced no evidence to show that there was fraud or that the price was excessive, but rested on the proposition that she as a shareholder has the right to elect to avoid the transaction and have it set aside without regard to its character. If the bargain was a fair one for the company, the directors had the right to stand to it. It was for them to elect, and not for the shareholders, much less for one shareholder. They were free to affirm the transaction, from which it must follow that a shareholder cannot set it aside by a suit without proving that it was fraudulent or wasteful. That is the foundation of a shareholder's right to interpose. If it was fraudulent or wasteful, it was a breach of trust to enter into it, and a suit by a shareholder would lie to undo it. The directors act for the corporation, and a shareholder has only a secondary right to interfere, and his interference must be based on fraud or waste by the directors, or on acts by them in excess of their powers. Hawes v. Oakland, 104 U. S. 457, 26 L. Ed. 827. I have been referred to no authority on this head, but in the opinion in the Gamble Case, supra, there is the following:

"Of course when he (a director) came to sell it to the company, if the sale were made by him as vendor to the directors, he being one of them, and acting as such, the sale was a voidable one, liable to be set aside at the suit of the company, and possibly at the suit of a shareholder."

This cautious statement in respect of a suit by a shareholder seems to have had reference to fraud or waste as the only basis for it. In a suit like this, the burden is not on the defendants to show that there was no fraud or waste.

Moreover, the sale could not be set aside here, and judgment given for the restoration of the purchase price, without great injustice to the vendor director. The sale was made in April, 1898, and this suit was not brought until April, 1903. Meanwhile the printing plant which was sold must have become pretty well worn out. It would be unjust to make the vendor take it back and restore the money in the absence of proof of fraud or waste; and there is nothing upon which to base any less rigorous judgment. The rule of the voidability of such transactions was adopted to secure justice, not injustice, to prevent wrong, not substitute one wrong for another, as is said in Duncomb v. N. Y., H. & N. R. Co., 84 N. Y., at page 199.

Judgment for defendants without costs.