(153 App. Div. 825.)

### CARR et al. v. KIMBALL et al.

(Supreme Court, Appellate Division, First Department.  December 13, 1912.)

1. Corporations (§ 308*)—Directors—Malfeasance—Distribution of Profits—Excessive Salaries—Additional Compensation.

Since directors of a private corporation are trustees of the corporation and for all the stockholders, and may not deal with themselves for their own benefit to the detriment of the corporation and the minority, where the majority first elected themselves directors, then officers, and then, instead of treating all the stockholders alike in the distribution of profits, distributed a large portion to themselves by voting to themselves excessive salaries, additional compensation, etc., the minority stockholders were entitled to sue in a representative action, for the benefit of the corporation, and cause the money so improperly taken from the corporation to be returned to its treasury.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1334–1349; Dec. Dig. § 308.*]

2. Corporations (§ 308*)—Directors—Trustees—Contract with Themselves.

Directors of a corporation, being trustees for the stockholders, are incapable of contracting with themselves in fixing their own salaries, and such purported contracts, if made, are voidable at the suit of the corporation, or minority stockholders, suing in a representative capacity, though the officer, under such circumstances, if he has performed work under a voidable contract that has benefited the corporation, is entitled to receive pay therefor on the theory of a quantum meruit; the burden being on him to show the fair and reasonable value of the services.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1334–1349; Dec. Dig. § 308.*]

3. Corporations (§ 308*)—Officers and Directors—Salaries—By-Laws—Right to Vote—Disqualification.

A by-law of a business corporation, that the compensation of all officers, employés, or agents of the corporation appointed by the board of directors should be fixed by the board, did not validate a resolution fixing the salary of a member of the board, whose vote was necessary to' constitute a quorum.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1334–1349; Dec. Dig. § 308.*]

4. Corporations (§ 308*)—Directors—Misconduct—Misappropriation of Funds.

Where directors of a corporation improperly voted profits to certain of their number, who were officers, under the guise of additional compensation, a member of the board, who was not an officer, and did not himself draw a salary or benefit by his vote, was not bound to refund any part of the money taken from the treasury under such resolutions.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1334–1349; Dec. Dig. § 308.*]

5. Corporations (§ 308*)—Directors—Misconduct—Suit by Minority Stockholder.

Where the directors of a corporation, in the exercise of their powers to manage its affairs, fixed the salary of the corporation's treasurer, who was not a director, and whose relation to the company was entirely contractual, a minority stockholder could not recover from the directors money voted to the treasurer out of such funds, on the ground that it was an illegal increase of the treasurer's salary.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1334–1349; Dec. Dig. § 308.*]

Scott and Laughlin, JJ., dissenting.

---

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Special Term, New York County.

Action by Walter C. Carr and Lucretia M. Carr, suing on behalf of themselves and all others similarly situated, against Horatio G. Kimball, the Broun-Green Company, and others, to compel an accounting by defendants as directors of the corporation. Judgment for plaintiffs, and defendants Kimball and Lawton and the corporation appeal. Modified and affirmed.

See, also, 151 App. Div. 928, 136 N. Y. Supp. 347.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Clarke, Breckinridge & Caffey, of New York City (Samuel B. Clarke, of New York City, of counsel, and Francis G. Caffey, of New York City, on the brief), for appellants.

William F. McCombs, of New York City (Abram I. Elkus, of New York City, of counsel, and Alexander Gordon and Carlisle Gleason, both of New York City, on the brief), for respondents.

CLARKE, J. This is a representative action brought by minority stockholders. The complaint charged a fraudulent conspiracy, prior to January 20, 1908, to oust plaintiff W. C. Carr from the directorate and from the service of the company, and thereafter to waste the net assets of the company in payment of excessive salaries and wages, and sought recovery from the directors of alleged excesses of salaries and wages paid to officers and employés of the company in 1908 and 1909, after Carr's ouster.

The judgment of June 30, 1911, which this court in a former opinion (151 App. Div. 928, 136 N. Y. Supp. 347) declared to be interlocutory, provided that the certain resolutions of the board of directors in 1908, 1909, and 1910, fixing salaries, be rescinded; that the defendants Kimball, Winnemore, and Lawton pay to the company the sum of $12,180, being the difference between the sum of $28,580.30, paid to Kimball as president, Winnemore as vice president and secretary, and Ward as treasurer, from January, 1908, to December 31, 1909, and the sum of $16,400, the fair and reasonable value of their services at $5,000, $2,200, and $2,000 a year, respectively; that said defendants account for the difference between the sums paid to Kimball, Winnemore, and Ward from January 1, 1910, to the date of the judgment, and the said salaries so fixed as fair and reasonable; and that a referee be appointed to take said account. Leave was granted to apply at the foot of the judgment for further direction. A perpetual injunction was also included in said judgment, restraining the company and said defendant directors from paying any salaries or other compensation exceeding the fair and reasonable value to the corporation of the services theretofore rendered or thereafter to be rendered by Kimball, Winnemore, and Ward.

A referee was appointed, an accounting had, and, by the judgment of March 28, 1912, the report of the referee was confirmed, and it was adjudged that Kimball, Winnemore, and Lawton pay to the corporation the further sum of $9,005, with interest. From these judgments, Kimball, Lawton, and the corporation appeal. The action was

discontinued as to Ryan before the trial, and Winnemore does not appeal.

The following facts were found by the learned Special Term:

Prior to the year 1894 a partnership known as Broun, Green & Adams was engaged in the stationery business in the city of New York. In said year the corporation Broun-Green Company was formed under the laws of the state of New York, which succeeded to the business of said partnership. Its capital stock was $50,000, divided into 500 shares, of the par value of $100 each. In 1895 the defendant Horatio G. Kimball acquired, and has ever since owned, a majority of the stock. On July 1, 1895, Kimball was elected secretary and treasurer, and became the executive head of the corporation, having been president and a director from 1896 to the present time. In 1897 the plaintiff Walter C. Carr entered the employment of the corporation, and thereafter and until January 20, 1908, remained in its employ and devoted his time solely to its business and interests. In 1899 he was elected a director and secretary and treasurer, and continued so until January 20, 1908. Said Carr devised and built up a very successful and profitable branch of business, namely, furnishing corporation outfits and supplies. This was an entirely new line in the defendant company's business, and for many years past has constituted over 50 per cent. thereof. On January 2, 1900, Kimball and Carr entered into a written agreement for the purchase by Carr and the sale by Kimball of 200 shares of the capital stock of the defendant corporation. Said agreement provided that for a period of three years they would vote for the election of each other as members of the board of directors and use their power as directors to vote Kimball a salary of $7,500 and Carr a salary of $5,000 for the term of three years, to increase their respective salaries in proportion to said salary, in the event that the profits of the business permitted such increase, and to decrease said salaries in similar proportion should a decrease in profits make it necessary, and to divide between themselves as salary, proportionate to the amount of their salaries of $7,500 and $5,000, respectively, any profits of the business which might accrue after a fund of $10,000 should have been accumulated in its treasury. After the sale of said 200 shares to Carr, Kimball and he owned together 97 per cent. of the capital stock, said Kimball owning substantially three-fifths and Carr two-fifths thereof, and their said salaries provided for in the agreement were intentionally proportioned by them to their respective stock holdings, and were intended to be a distribution of profits in the guise of salaries, and not merely compensation for their services.

From 1900 to 1906 the only other stockholders were defendant Ryan, who held 3 shares, defendant Winnemore, who held 12 shares, and Richard Lawton, Sr., who held 5 shares of Kimball's stock to qualify him as a director, but which were beneficially owned by Kimball. Carr acquired 1 additional share to the 200 bought from Kimball. From 1900 to 1906 all of the stockholders, except Lawton, were employés of the company. The terms of the said agreement of January 2, 1900, were observed during the three-year term provided therein,

except that the profits other than the salaries of $7,500 and $5,000 were distributed as "extra compensation." Such salaries were not based upon services rendered, and were not designed to equal the fair and reasonable value of their services as officers and employés, but were much in excess thereof. In 1903 and 1904, after the termination of the agreement, on account of prolonged absences of Kimball, the salaries of Kimball and Carr were equalized, to wit, at $6,250 in 1903 and $4,800 in 1904. In 1905, 1906, and 1907 the salaries of Kimball and Carr were respectively $7,500 and $5,000, $9,000 and $6,000, $9,000 and $6,000.

These salaries were in substantial proportion to their stock holdings, were distributions of profits in the guise of salaries, and were not designed to be, and were not, the fair and reasonable compensation for their services. During the period fom 1900 to 1907 the corporation made distributions of its profits to its stockholders on their stock under the name of "extra compensation," in lieu of dividends; but said extra compensation was based on stock ownership, precisely as dividends are based. During those years no dividends were distributed, except that in 1906 and 1907 dividends of 6 per cent. were declared to avoid making a report to the state comptroller. These dividends, in addition to "extra compensation," were distributed to its stockholders. From 1900 to 1907, inclusive, the board of three directors consisted of Kimball, Carr, and Lawton, Sr. Lawton held the 5 qualifying shares alluded to, but he never attended a directors' meeting, or took any part in the affairs of the corporation, and was never consulted as to the salaries to be voted, or drew dividends on the shares standing in his name, which were drawn by Kimball. During said period Kimball completely controlled and determined the amounts to be drawn by the officers and employés as salaries. During said period the corporation was in effect conducted in respect to the distribution of·profits and salaries to Kimball and Carr as a partnership, in which the former held a three-fifths interest and the latter a two-fifths interest.

In 1906 Carr sold to defendant Ryan 21 shares of his stock, and Kimball sold to him 26 shares of his. In January, 1907, Lucretia 'M. Carr, wife of Walter C. Carr, acquired 5 shares. Plaintiff W. C. Carr now owns 175 shares, plaintiff Lucretia Carr 5 shares, defendant Kimball owns 253 shares, defendant Winnemore 12 shares, Lawton 5 shares, and Ryan 50 shares. In January, 1905, Kimball attempted to reduce Carr's salary, and to raise his own to $9,000 a year. Carr refused to consent, and did not sign the minutes purporting to authorize such increase until after Kimball consented that his salary and that of Carr should be, for 1905, $7,500 and $5,000, respectively. In January, 1906, Kimball insisted that his salary should be fixed at $9,000. Carr protested against any increase, and only consented to increase to $9,-000 and $6,000, respectively, when Kimball threatened him with expulsion from the employment of the defendant corporation unless he consented to the increase in Kimball's salary. In 1907 Kimball again fixed his own salary at $9,000 and Carr's at $6,000. Said increases were not commensurate with any increase in the duties or services of Kimball or Carr.

The court specifically found:

"That in or about the year 1905 said Kimball wrongfully and fraudulently formed the plan of depriving plaintiff Walter C. Carr of all connection with defendant corporation, of obtaining complete control thereof and voting himself as its president a grossly excessive salary, or of a much greater salary than he had previously drawn."

It was further found that defendant Richard M. Lawton is a relative and close personal friend of defendant Kimball, and is the holder of 5 shares of stock, which he acquired shortly before January 20, 1908, from said Kimball as a gift to qualify as director. Said shares were held theretofore by Richard Lawton, Sr., the father of said Richard M. Lawton, who had been a director from 1900 to 1907, inclusive. Prior to January 20, 1908, defendants Kimball, Winnemore, Lawton, and Ryan, owners of record of 320 shares of the capital stock of the defendant company, conspired to use their control of the majority of its stock to exclude Carr from the employ thereof, and the plaintiffs from representation on its board of directors, from influence in its management, and from information as to its assets, business, and affairs, and thereafter to waste and dissipate the net assets and profits of the company, and to defraud the said company by diverting the same to the payment to defendants Kimball, Winnemore, and Ryan, and to other employés of said corporation, of salaries greater than the fair and reasonable value of the services of such persons to be rendered to said corporation. By the unanimous vote of the stock held by said Kimball, Winnemore, Ryan, and Lawton, defendants Kimball, Winnemore, and Lawton were elected on the 20th of January, 1908, re-elected in 1909 and 1910, and composed the whole board of directors. At a meeting of the board attended by defendants Kimball, Winnemore, and Lawton on January 20, 1908, said directors elected defendant Kimball president, defendant Winnemore vice president and secretary, and Terence A. G. Ward treasurer, thereof, and failed to elect plaintiff W. C. Carr to any office of said company, and failed to continue him as an employé thereof; that said defendants Kimball, Winnemore, and Ward were re-elected to said offices in 1909 and 1910, and served as such officers until the trial of this action. Defendant Kimball has since January 20, 1908, dominated the other members of the board of directors, and the votes and the actions of said board were always thereafter the result of his dictation. Said directors excluded Carr from the employment of said company, from access to its place of business, books, and records, and ever since have deprived plaintiffs, so far as in their power, of all knowledge of its affairs and business. In January, 1908, defendants Kimball, Winnemore, and Lawton authorized payment to Kimball of a salary of $9,000 a year as president, and to defendant Winnemore a salary of $2,600 a year as vice president and secretary, of which $520 was so-called extra or additional compensation. On April 21, 1909, defendants Kimball, Winnemore, and Lawton authorized the payment to defendants Kimball and Winnemore, and to Terence A. G. Ward, J. F. Townsend, C. F. Trafton, and A. W. Gill of the sums of $11,400, $2,340, $1,560, $1,248, $1,170, and $1,144, respectively, per year as salaries from the 18th of January, 1909, as

139 N.Y.S.—17

president, vice president, and secretary, treasurer, and employés of the defendant corporation, respectively, and further authorized the payment to said Winnemore, Ward, Townsend, Trafton, and Gill, in lieu of all previous forms of additional compensation of amounts equivalent to dividends on 30, 15, 10, 5, and 5 shares of stock, respectively, whenever dividends should be declared and paid by the defendant company, including all dividends declared and paid since January 18, 1909. Said Trafton, Townsend, and Gill are not and never have been stockholders.

In and by the said resolution, defendants Kimball, Lawton, and Winnemore authorized the payments of the increased salaries, including increased additional compensation, to the said Kimball and Winnemore for the period from January 18, 1909, to April 21, 1909, although the services rendered by defendants Kimball and Winnemore, for which said resolution purported to authorize such increased and additional compensation, had been already paid for by the defendant corporation as salaries paid under the resolutions adopted on January 20, 1908, and June 11, 1908. The increased salaries, including the increased extra compensation, amounted to somewhat more than the salary of $6,000 a year which the plaintiff Carr had drawn prior to January 20, 1908. Said increases were without any corresponding increases in the value of their services rendered to the corporation as its officers and employés, and were without any increase in their duties and responsibilities. Defendants Kimball and Winnemore have continued since January 20, 1908, to perform substantially the same duties that they were performing before that date. Defendants Kimball and Winnemore made use of their positions as directors to promote their own interests, by increasing the said salaries without regard to the interests of the defendant corporation, and to its detriment, and the detriment of the plaintiffs. On January 24, 1910, defendants Kimball, Winnemore, and Lawton authorized the payments of salaries during 1910 at the same rates as the previous year, and such salaries include the payment of the so-called extra or additional compensation. Said salaries paid by, and authorized to be paid to, Kimball and Winnemore during the years 1908, 1909, 1910, and 1911, and to said Ward during the year 1909, under the terms salaries, and the terms extra or additional compensation, were and are extravagant and largely in excess of the fair and reasonable compensation for their services rendered to the corporation as its employés and officers. Said salaries and extra compensation were paid wholly out of the assets and net profits of the defendant corporation, and were without consideration or return in value therefor. The fair and reasonable value of the services as officers and employés of defendants Kimball and Winnemore and of Ward during the years 1908, 1909, 1910, and 1911 was and is the sums, respectively, of $5,000, $2,200, and $2,000 a year. Defendants Kimball, Winnemore, and Lawton did not authorize payments of the salaries, including extra compensation, paid Kimball, Winnemore, and Ward, since January 20, 1908, in good faith, or with regard to the best interests of the defendant corporation, and to promote its interests, or with regard to the services to be returned therefor by their recipients,

and did not honestly regard such salaries and extra compensation as the fair and reasonable compensation for the services to be rendered therefor. The defendant directors had never since the exclusion of plaintiff W. C. Carr from the company considered the question of salaries in good faith, but have knowingly acted in fraud of the corporation and of the plaintiffs herein, and knew that said salaries were extravagant and in excess of the value of their services. They purposed and intended, by authorizing and making such payments of salaries, to waste and dissipate the assets and net profits of the defendant corporation, and to appropriate its profits fraudulently in the guise of excessive salaries, and the authorization and payment of such salaries during the years 1908 to 1911, inclusive, was in pursuance and in consummation of the scheme of said Kimball and of his conspiracy with said defendants Lawton, Ryan, and Winnemore to pay to himself and other officers and employés excessive and extravagant salaries after he should have excluded the plaintiff W. C. Carr from the employ of the defendant corporation. Such payments over the fair and reasonable compensation constituted waste of the assets of the defendant corporation, and were a fraud upon the defendant corporation and a breach of trust on the part of the defendants Kimball, Winnemore, and Lawton. The defendants Kimball, Winnemore, Lawton, and Ryan have since the 20th day of January, 1908, exclusively controlled the defendant corporation, and a demand by the plaintiffs upon them, or any of them, to bring this action, or to take any action to reduce the salaries authorized by defendants Kimball, Winnemore, or Lawton, or to procure the same to be refunded, would have been useless. Defendants Kimball, Winnemore, and Lawton intend to continue to waste and dissipate the assets of the defendant corporation by paying extravagant and unreasonable salaries to its officers and employés, and that such corporation will sustain irreparable damage thereby, unless said defendants are restrained from so doing.

[1] The case presents an illustration of that form of industrial development where a business partnership is transformed into a small and close business corporation, and, so long as harmony exists among its members, is conducted practically as a copartnership; but, when dissension and disagreement arise, the majority attempts to oust the minority, not only of control, but of a fair return upon the investment. Instead of treating all the stock alike, and distributing the profits fairly and proportionately by way of dividends, the majority first elect themselves directors, then as directors elect themselves officers, and then distribute among themselves a substantial part of the profits in the way of excessive salaries, additional compensation, and other devices. The legal difficulty to the final accomplishment of these purposes lies in the well-settled proposition that the directors are trustees of the corporation and for all the stockholders, and may not deal with themselves for their own benefit, to the detriment of the corporation and the minority, who, by a representative action, may cause the sums improperly taken to be returned to the treasury. The following cases sufficiently establish the trustee doctrine in this state:

In Butts v. Wood, 37 N. Y. 317, the action was brought to set aside

the proceedings of the defendants as directors in voting to the defendant Wood extraordinary compensation for his alleged services as secretary and otherwise. At the meeting of the board when the resolution was passed there were present three of the five directors; the three being the defendant, his father, and a kinsman. The court said:

"This board, as thus constituted, had no authority to entertain the bill in question, or to do anything in relation to it. * * * The claimant was disqualified from acting, because he could not deal with himself, and without him there was no quorum of the directors, and they had no authority to transact business. The relation existing between Daniel Wood and the corporation was that of trustee and cestui que trust. * * * The rule that one holding a position of trust cannot use it to promote his individual interests, by buying, selling, or in any way disposing of the trust property, is now rigidly administered in every enlightened nation, and its usefulness and necessity become more and more apparent. * * * To permit such a transaction to stand would be a reproach to the administration of justice."

In Kelsey v. Sargent, 40 Hun, 150, an action by stockholders to set aside notes made by officers of a company, who were also directors, in payment of salaries voted for by themselves, Mr. Justice Haight said:

"The question is thus sharply presented as to whether or not the directors of a corporation have the power to bind the stockholders to pay such salaries as they by resolution see fit to vote themselves. * * * In Coleman v. Second Ave. R. R. Co., 38 N. Y. 201, the general rule was stated to the effect that directors, acting as directors and composing a majority of the board, could not make a bargain with themselves binding upon the company. * * * Without stopping to determine the question as to whether or not the board of directors have the power by resolution to vote salaries to one or more of their own body, we are clearly of the opinion that such salaries so voted are not binding upon the company, where the director in whose favor the salary is voted is present participating in the proceeding."

In Copeland v. Johnson Mfg. Co., 47 Hun, 235, Daniels, J., in an action to recover an assigned claim for salary, said:

"A director or trustee of a corporation is disabled from stipulating or agreeing in behalf of the corporation and of himself for a benefit from it to himself. He acts in the capacity of trustee, * * * and as he sustained that relation to the company he could not bind it by agreements securing or obtaining those beneficial results for himself."

The rule is stated in Sage v. Culver, 147 N. Y. 241, 41 N. E. 513:

"Where it appears that the trustee or other officer has violated the moral obligation to refrain from placing himself in relations which ordinarily produce a conflict between self-interest and integrity, there is in equity a presumption against the transaction, which he is required to explain."

In Bosworth v. Allen, 168 N. Y. 157, 61 N. E. 163, 55 L. R. A. 751, 85 Am. St. Rep. 667, the court said:

"While courts of law generally treat the directors as agents, courts of equity treat them as trustees, and hold them to a strict account of any breach of the trust relation. For all practical purposes they are trustees, when called upon in equity to account for their official conduct. * * * Directors of a corporation are charged with the duties of trustees, and bound to care for its property and manage its affairs in good faith, and for a violation of that duty, resulting in a waste of its assets, injury to its property, or unlawful gain to themselves, they are liable to account in equity the same as ordinary trustees. * * * It is the peculiar province of courts of equity to

supervise the execution of trusts, and to call trustees to an accounting for their management of trust estates, and especially for every violation of their primary duty not to deal with trust property to their own advantage."

Jacobson v. Brooklyn Lumber Co., 184 N. Y. 152, 76 N. E. 1075, presents many of the features of the case at bar. It was a representative action, brought by minority stockholders, to recover for the corporation from the individual defendants amounts received by them for salaries as officers of the corporation, and to cancel any and all resolutions purporting to authorize said individual defendants to credit themselves with certain amounts of accumulated or deferred salaries. When the corporation was organized there were five stockholders, all of whom became directors, and the salaries paid to the officers were moderate. Subsequently the board of directors was reduced from five to three, the plaintiff was ousted from his office, and the board consisted of Verity, who was made president, and Robertson, who was made vice president and treasurer, and a brother of said Robertson, who owned 5 shares. A resolution was thereupon adopted, fixing the salaries of the president and the vice president at $8,000 a year each. Notwithstanding the trial court found as facts that Robertson and Verity had been officers since its organization, had devoted all their time to its business, and the company was in a prosperous condition as a result of their management, and that the increases in salary were legitimate and commensurate with the increase in business and resulting profit, the Court of Appeals said:

"The findings which it is claimed justify their acts in so taking and crediting to themselves increased salaries are in substance that the net assets of the corporation have not been depleted, but increased, and that the salaries are legitimate and commensurate with the increased business and resulting profits. The relation of an officer to a corporation is fiduciary, and he must at all times act in good faith and unselfishly towards the corporation. The relation is such that an officer of a corporation cannot make an agreement with himself, acting on the one part individually and for his own benefit, and on the other part in his fiduciary capacity as an officer of the corporation. It is said in 10 Am. & Eng. Enc. of Law, 790: 'A director cannot, with propriety, vote in the board of directors upon a matter affecting his own private interest, any more than a judge can sit in his own case; and any resolution passed at a meeting of the directors at which a director having a personal interest in the matter voted will be voidable at the instance of the corporation, or the shareholders, without regard to its fairness, provided the vote of such director was necessary to the result.' The courts in this state have frequently asserted the voidability of acts and votes of corporate officers when they are affected by private interests."

In Miller v. Crown Perfumery Co., 57 Misc. Rep. 383, 109 N. Y. Supp. 760, modified and affirmed 125 App. Div. 881, 110 N. Y. Supp. 806, the plaintiff and the two defendants were originally incorporators of the company, each holding one-third of the shares of capital stock, and for a number of years each participated equally in the distribution of profits. Subsequently, by reason of a disagreement with the plaintiff, the two individual defendants sought to deprive the plaintiff of the equal participation in the profits to which his holdings of stock entitled him—the method adopted being, first, a refusal to re-elect him as a director and officer of the company; then, as directors, the two

defendants voted to themselves, by way of salaries, the profits made. The court rescinded the resolutions and directed the repayment of the amounts received thereunder to the corporation, saying:

"The defendants, * * * meeting as a majority of the board of directors, passed the resolution in which they were interested, voting to themselves the property of the corporation as salaries. They thereby dealt with themselves as trustees in respect of their trusts for their individual advantage and benefit. Such action has very properly been made the subject of judicial investigation and criticism, and the court will not permit an officer to trifle with the trust which his fiduciary relation imposes upon him, nor to use his position for personal gain to the detriment of the corporation. Corporate stability rests upon official honesty, which will guarantee such stability."

In Davids v. Davids, 135 App. Div. 206, 120 N. Y. Supp. 350, three directors owned all of the stock of the company, except the shares owned by the plaintiff. They elected themselves officers and fixed a salary of $8,000 for each. For some years prior to the passage of the resolution the salaries had been very moderate. Mr. Justice McLaughlin said:

"It is difficult to see how plaintiff could have made out a stronger case of fraud. The capital of the company was * * * only $30,000, and the three directors were the only stockholders, except the plaintiff, who held one-sixth of the stock. They met and voted themselves this large increase in salary by a single resolution, in which they all concurred. As directors they held a position of trust. It was their duty to manage the business and affairs of the corporation with honesty and fidelity, having in view, not only their own interests, but the interests of the plaintiff. Simply because they happened to hold a majority of the stock, which enabled them to elect themselves directors, and that they constituted all the directors, gave them no right to vote themselves salaries. * * * Salaries cannot be voted under such circumstances, and, when so voted and paid, the money can be recovered back for the corporation at the suit of an aggrieved stockholder. * * * It is urged on the part of the appellants that the plaintiff failed to prove the salaries voted were excessive, and that the bad faith of the directors cannot be presumed. The suggestion is based upon an erroneous assumption as to the precise relation in which the defendants, as directors, stood to the corporation. They occupied a position of trust, and when the fact appeared that they had voted themselves salaries by a resolution in which they all joined, then they were put in the position of trustees, dealing with themselves to their own advantage, with respect to their trust. In such case the presumption is that they acted in their own interest, to the prejudice of the corporation, and the burden was upon them to overcome the presumption. Sage v. Culver, 147 N. Y. 241, 41 N. E. 513. This they entirely failed to do. A minority stockholder in a corporation has nothing to say about the management of its business and affairs, because the directors are elected by a majority. Notwithstanding this fact, a minority stockholder has *some* rights which the directors are bound to respect, namely, that the property of the corporation shall not be stolen or misappropriated under the guise and pretense of salaries of officers; and whenever such attempt is made, and the action by which it is attempted to accomplish that result is reviewed by a court of equity, it will not hesitate to compel the directors to do what they ought to have done by way of restitution. The trial court here should have directed the return of all moneys withdrawn. It ought not to have permitted any of the defendants to retain an amount equivalent to the amount of salaries received before the passage of the resolution, because they had no legal right to such sums. The plaintiff, however, did not appeal. She does not complain of this allowance."

[2] There is another set of cases which, while fully sustaining the proposition that directors are trustees, incapable of contracting with themselves, and that such purported contracts are voidable at the suit of the corporation, or a minority stockholder suing in a representative capacity, nevertheless recognize a tendency in modern times towards the formation of those small business corporations, and, realizing that those most interested and holding practically all of the stock will in all probability become the directors and officers thereof, take the view that, while the contract is voidable, nevertheless the officer who has done the work by which the corporation has benefited is entitled to receive pay on the theory of quantum meruit. The rule is, however, that the burden is upon the director officer to show the fair and reasonable value of the services rendered.

In McNaughton v. Osgood, 41 Hun, 109, Landon, J., said:

"The corporation has received in consideration the valuable services of these officers. If these officers had not rendered these services, others would need to have been employed, and from the nature of the services it might not have been able to employ any one who could so efficiently perform them. Besides, there is a manifest propriety in a corporation employing those who are most interested in its success and are also best able to promote it; and hence follows the duty to render them reasonable compensation. * * * Hence the corporation, upon rescinding, ought to pay the reasonable value of the services of these officers, rendered in a department of labor beneficial to it, and outside of the duty of direction which the office of director implies."

Fitchett v. Murphy, 46 App. Div. 181, 61 N. Y. Supp. 182, was an action brought by a minority stockholder to restrain defendants from paying to themselves certain salaries claimed to be exorbitant. The trial court found as matter of fact that the salaries were voted and paid as a method of division of earnings, and not as compensation for services, and that under this method all the stockholders were paid in proportion to their holdings of stock, that these payments were not for services to be rendered, and that services were not rendered as an equivalent for them. Mr. Presiding Justice Goodrich, with whom Cullen, Bartlett, Hatch, and Woodward, JJ., concurred, said:

"This is one of those cases where the majority of stockholders have entered into a combination to control the affairs of the corporation for their own benefit and in fraud of the rights of the minority. Such a combination will always be rebuked by a court of equity. It is not necessary to restate well-settled principles upon this subject. * * * No action by the directors, and no combination among any of them, can be permitted to invade the rights of the plaintiff and the minority stockholders in the corporation. So long as all the parties in interest, incorporators, stockholders, directors, and officers, assented to the scheme for the distribution of assets by the payment of salaries, the plan was not objectionable. * * * It is not difficult to discover a plan to 'freeze out' Fitchett and exclude him from all benefits, except such as might be derived from the payment of dividends. * * * It does not appear that they [the defendants] rendered any services as officers sufficient to justify the large salaries paid them, and the payment of such salaries, voted by the defendants themselves, is not justified by any evidence of services rendered in their office."

The learned court in its opinion correctly held that:

"Directors of a corporation have no right to vote salaries to one another as mere incidents to their office, as was done here. They are not barred be-

coming employés of their corporation, and they are entitled to reasonable compensation for their services as such. But as, in fixing their compensation, they are in the position of trustees dealing with themselves in respect of their trusts, their action is subject to question by the stockholders, or to review by the court of equity at the suit of a stockholder."

See, also, Bagley v. Carthage, W. & S. H. R. R. Co., 165 N. Y. 179, 58 N. E. 895; Gaul v. Kiel & Arthe Co., 199 N. Y. 472, 92 N. E. 1069.

These cases flatly support the judgment at bar, in so far as it requires the repayment of the salaries voted by the directors to Kimball and Winnemore, themselves directors and officers. Indeed, the said appellants ought not to complain, because they have been permitted to retain what the court has determined was a fair and reasonable amount for the services rendered, and as in the Davids Case, supra, as the plaintiff has not appealed, that part of the judgment will not be disturbed.

[3] To avoid the effect of these authorities, the learned counsel for the appellants makes an elaborate argument upon what he calls the "jurisdiction principle." Stated tersely, it is that because the by-laws provide that "the salary or compensation of all officers, employés, or agents of the company appointed by the board of directors shall be fixed by the board," the courts have no authority to disturb the deliberate decisions of the board of directors, made in the exercise of its lawful powers. He cites a long line of cases as to the power to interfere with the discretionary powers of public officers and boards. Needless to say he cites no case holding that a court of equity is powerless to investigate the transactions of a trustee dealing with himself, or a board of directors voting salaries to its members. He says that in none of the cases cited by respondent was there any such by-law. He is mistaken. In the leading case of Jacobson v. Brooklyn Lumber Co., 184 N. Y. 152, 76 N. E. 1075, there was a similar provision. In McConnell v. Com. M. & M. Co., 31 Mont. 563, 568, 79 Pac. 248, 249, the court said:

"The directors had power to adopt a code of by-laws (Comp. Stat. 1887, div. 5, § 454); but they could not, even under such a by-law, vote a salary to one of their number, where the vote of such a director was necessary to make a quorum."

The laws of this state have always conferred upon corporations the power to appoint such officers and agents as its business shall require, to fix their compensation, and to make by-laws not inconsistent with any existing law. Yet, with such provisions in force, the courts have again and again said:

"It is against *public policy* to allow persons occupying fiduciary relations to be placed in such positions as that there will be constant danger of a betrayal of trust by the vigorous operation of selfish motives. The rules upon this subject are illustrated by many cases." Earl, J., in Barnes v. Brown, 80 N. Y. 527, at page 535.

We cannot accept the proposition that, by the adoption of such a by-law, a corporation, its directors, and its affairs can be divorced from the well-established equity jurisdiction. We cannot believe that,

during all the years the courts have been elaborating and strengthening the fiduciary principle for the protection of stockholders, they were oblivious of the controlling jurisdictional principle propounded by appellants, which, if it exists, nullifies and destroys the fiduciary.

[4] We think, however, that the judgment should be modified. We see no ground for holding Lawton for the amounts found erroneously paid to Kimball and Winnemore. While he was a director, he was not an officer, and did not himself draw a salary or benefit by his own votes.

[5] There is also no reason why the defendants should be held responsible in this action for the increase of salary of the treasurer, Ward. He was not a director, and his connection with the company was contractual. It is the breach of duty as fiduciaries in dealing with themselves that receives the condemnation of the court. There is no such principle involved in fixing the salary of an employé of the company, not a director. We are of the opinion that the judgment should be modified, in so far as it holds the defendants responsible for the excess payment to Ward of $190 a year, and that the injunction should also be modified in that regard. As we think this is a matter of law, there should be no difficulty in making a' proper order of modification.

We have examined with care this voluminous record and the briefs. We are satisfied that the findings necessary to sustain so much of the judgment as is hereby affirmed are supported by the evidence. We regret to say that in the appellants' brief an attack is made upon the attorney for the respondent, claiming such collusion with one of the defendants as ought to vitiate this judgment. We think that there is no foundation for the charge, and that the claim is totally unwarranted.

The judgment, modified as indicated, should be affirmed, with costs and disbursements to the respondent.

INGRAHAM, P. J., and McLAUGHLIN, J., concur.

SCOTT, J. (dissenting). For the reasons stated by me in Godley v. Crandall & Godley Co. and Others, 139 N. Y. Supp. 236 (decided herewith), I am of opinion that the judgment appealed from should be affirmed in its entirety, and that the directors should be held liable, not only for the moneys illegally voted to themselves and received by them, but also for the moneys similarly paid to others, through their action. I am not disposed to limit the responsibilities of directors to liability to account only for moneys of the corporation which they have actually received themselves. It is not only the "breach of duty of fiduciaries in dealing with themselves that receives the condemnation of the court," but the breach of duty in dealing with the property and funds of the corporation. That they themselves profited by their own acts is only a circumstance going to establish the mala fides of the transaction.

LAUGHLIN, J., concurs.