BANKERS' TRUST CO. v. R. E. DIETZ CO. et al.

(Supreme Court, Appellate Division, First Department. July 10, 1913.)

1. CORPORATIONS (§ 320*)—ACTIONS BY SHAREHOLDERS AGAINST DIRECTORS— COMPLAINT.

In an action by a stockholder to set aside a dividend declared by a corporation, and not paid in cash, but represented by certificates of indebtedness, on the ground that the dividends were issued by the directors for the purpose of destroying the value of the stock, in which plaintiff's testator had an interest as remainderman, a complaint which does not allege that the corporation had not earned profits sufficient to justify payment of the dividends, but did allege that the company had invested profits to an amount not specified in property, and that it did not have surplus profits available to pay dividends, is not sufficient to state a cause of action; the last allegation being merely the statement of a conclusion.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1426–1431, 1433–1439; Dec. Dig. § 320.*]

2. CORPORATIONS (§ 157*)—DIVIDENDS—"SCRIP DIVIDENDS."

A corporation has a right to issue scrip dividends, that is dividends not payable in cash, but in certificates of indebtedness giving the holder certain rights therein specified against the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 584–586; Dec. Dig. § 157.*]

3. CORPORATIONS (§ 150*)—DIVIDENDS—CERTIFICATES OF INDEBTEDNESS.

Such certificates bear interest from the date of issue, and therefore a provision in them that interest shall be paid is proper.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 547–554; Dec. Dig. § 150.*]

Ingraham, P. J., dissenting.

Appeal from Special Term, New York County.

Action by the Bankers' Trust Company against R. E. Dietz Company and others. From an interlocutory judgment sustaining demurrers to the amended complaint, plaintiff appeals. Affirmed.

See, also, 151 App. Div. 939, 135 N. Y. Supp. 1099.

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT, DOWLING, and HOTCHKISS, JJ.

Joseph M. Hartfield, of New York City, for appellant.

William Travers Jerome, of New York City, for respondents.

DOWLING, J. This action is a representative one, based on the following alleged facts: The defendant R. E. Dietz Company, a New York corporation, has an outstanding capital stock of 1,000 shares of a par value of $100 each. Robert E. Dietz at the time of his death, September, 1897, owned 600 shares of this stock, the defendant Frederick Dietz owned 250 shares, and John E. Dietz 150 shares. The

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

two latter were sons of Robert E. Dietz, and the corporation was practically a copartnership, the three owning its entire stock. By the will of Robert E. Deitz, Frederick Dietz, Samuel McMillan, and William Henry White were constituted executors and trustees, and his 600 shares of stock were left to them in trust for the lifetime of Anna Dietz, who died in August, 1911. William Henry White married Mary Augusta Dietz, a daughter of Robert E. Dietz, and she was the owner of a one-fifth vested remainder interest in said shares of stock, which thereafter vested in her husband. She died, and White thereafter died on July 3, 1904, seven years before the death of Robert E. Dietz's widow. It is alleged that the individual defendants Frederick Dietz, John E. Dietz, and Frank H. Clement, finding that by the will of William Henry White a considerable portion of his estate, including said stock, would go to others than members of the Dietz family, formed a conspiracy for the purpose of impairing, reducing, and destroying the value of said stock owned by White, and passing to the trustee under his will. This conspiracy is claimed to have been effectuated by the passing of a resolution by the board of directors of the company on September 16, 1904, whereby a dividend of 340 per cent. was declared payable to the stockholders of the company. It is alleged in the complaint that said dividend was never intended in fact to be paid, but debentures or certificates of indebtedness to the full extent were issued, $204,000 in par value being allotted to Anna Dietz, the widow, representing the 60 per cent. of stock belonging to her husband's estate from which she had a life income, $80,000 being issued to Frederick Dietz and $51,000 to John E. Dietz, representing their proportion of said debenture issue based upon their stock holdings. The sixteenth paragraph of the complaint then avers as follows:

"Plaintiff alleges that the said debentures were and all of them were issued without any consideration accruing to the said corporation therefor, and that said debentures are not legal, valid obligations of the defendant R. E. Dietz Company. That on September 16, 1904, the defendant R. E. Dietz Company did not have surplus profits of the company available for the payment of dividends the sum of $340,000, or any such sum or any sum in excess of $50,000. That on the said date all of the profits of the R. E. Dietz Company, which had been earned by it, were invested in land, machinery, materials, and appliances used in its manufacturing business, and the said corporation could not have continued its business if on said date any such sums had been withdrawn from the treasury of said company for distribution to stockholders."

It is then alleged that these certificates were issued without consideration, and that they would leave little or no sum available for the payment of dividends upon the capital stock of the company, and would cause the R. E. Dietz Company to be no longer a company owing practically no money, but a corporation heavily in debt, and would seriously injure and affect the conduct of said company. The second and third causes of action are in effect the same as the first cause of action, from which quotation has heretofore been made.

[1] The infirmity of this complaint, as I view it, is that there is absolutely no allegation that the company had not earned profits sufficient to justify the payment of said dividend. On the contrary,

the pleader has been careful to limit himself to an allegation that the company did not have surplus profits available for the payment of dividends in the sum of $340,000. Not only does this involve a conclusion, but it specifically appears as well that profits have been earned and invested in other property, the value of which is not given nor is it alleged to be less than the aggregate of the debentures issued.

[2] There can be no doubt of the right of the corporation to issue a scrip dividend, which is thus defined:

"A scrip dividend is a dividend or certificate giving the holder certain rights which are specified in the certificate itself. These dividends are usually declared when the company has profits which are not in the shape of money, but are in other forms of property, and the company wishes to anticipate the time when the property may be sold for cash, and the cash distributed by a money dividend. The certificate sometimes entitles the holder to a sum of money payable with interest at a certain time after date, or at the option of the company, or when the company shall have accumulated sufficient surplus to pay the certificates in full." Cook on Corporations (6th Ed.) § 535.

And in section 546 the same writer says:

"When the company has used profits for improvements it may lawfully borrow an equivalent sum of money for the purpose of a dividend."

The validity of scrip dividends was upheld in Matter of Robinson's Trust, 218 Pa. 481, 67 Atl. 775, wherein it was also held that such dividends when declared belonged under the will of the testator to the life tenant and not to the remaindermen. So in Bailey v. Railroad Co., 89 U. S. (22 Wall.) 604, 22 L. Ed. 840, the validity was upheld of a scrip dividend to the extent of 80 per cent. of the individual holdings of capital stock, payable out of future earnings, convertible at the option of the company into a stock dividend of the same amount whenever the railroad company was authorized to increase its capital stock to an amount sufficient for such conversion. In Billingham v. Gleason Mfg. Co., 101 App. Div. 476, 91 N. Y. Supp. 1046, affirmed 185 N. Y. 571, 78 N. E. 1099, the right of a corporation was upheld to issue a scrip dividend which constituted an indebtedness of the company to the stockholders. As the court said:

"That constituted an indebtedness of the company to Billingham. It was so much set apart and reserved for him as undivided earnings. His share was ascertained and his right to it was fixed. It was a divided share of past earnings, and, as we think, became a severed indebtedness of the company, for nothing is better understood than that a dividend when declared is a debt due absolutely to the stockholders. It was an obligation perfect and complete in its character, although payment was postponed to a future time."

I think, therefore, that this complaint as to each of the causes of action therein attempted to be set forth was fatally defective, as it contains no appropriate allegation that the undivided profits of the company did not amount to as much as the total sum for which the scrip dividend was authorized.

[3] Furthermore, under the decisions quoted, interest became payable upon the amount of the scrip from the time of its issue, and therefore the fact that the certificate contains a provision for the payment of such interest is not an appropriate subject for complaint. It is apparent that where the corporation, instead of disposing of the

142 N.Y.S.—54

property in which the profits have been invested and then paying the dividends from the proceeds, prefers to retain the property and postpone payment to the stockholders, it is reserving the property from which it is fair to assume it earns a return sufficient to discharge in whole or in part the interest upon its dividend obligation. Moreover, it had the right, if it so elected, to borrow the money with which to pay dividends when it had invested the profits in improvements at least equaling in value the dividends declared, so that interest in that event would equally be a charge before further dividends could be declared as of earnings.

The judgment appealed from should therefore be affirmed, with costs, with leave to the plaintiff upon payment thereof to serve an amended complaint.

LAUGHLIN, SCOTT, and HOTCHKISS, JJ., concur.

INGRAHAM, P. J. The plaintiff sues as a stockholder of the R. E. Dietz Company, a domestic corporation, and the relief asked is that the defendants, who are directors of the said company, be required to account for the corporation property and effects of said corporation which have been lost by reason of the default and neglect of the defendants and for the money paid out as dividends or principal and interest on certain debentures or certificates of indebtedness described in the complaint, and that the said certificates of indebtedness be adjudged to have been illegally issued, and to account for all money received by the defendants as interest on said certificates. The respondents demurred to the complaint as not stating facts sufficient to constitute a cause of action, which demurrer was sustained.

The action being brought on behalf of the corporation, the question presented is whether on the fact alleged the corporation is entitled to any relief as against its directors. Robert E. Dietz died in September, 1907, the owner of 600 shares of the capital stock of the corporation, which consisted of 1,000 shares of the par value of $100 each. He left a last will appointing the defendants Frederick Dietz and Samuel McMillan and the plaintiff's testator trustees, to whom he bequeathed the 600 shares of stock, in trust to hold the same during the life of his wife, on whose death it was to be divided among his children, one of whom was the wife of the plaintiff's testator, and this right to the stock was acquired by the plaintiff's testator before his death. It is alleged that, after the death of the plaintiff's testator, the defendant Frederick Dietz has controlled the corporation, and elected the directors thereof and has caused himself to be elected president thereof; and the question is whether the corporation can call its directors to account for their management of its affairs.

The complaint alleges that the defendants, respondents, "formed a scheme, plan, and conspiracy for the purpose of impairing, reducing, and destroying the value of the interest in the stock so owned by plaintiff as trustee," and, in order to carry out said scheme, defendants caused to be issued a large amount of debentures or certificates of indebtedness by the defendant corporation; that on September 16, 1904,

by a resolution of the board of directors of the corporation, a dividend of 340 per cent. on the capital stock of the corporation was declared; that the corporation had no money to pay such dividends, and it was not intended to be paid in money, but by the issue of certificates of indebtedness; that before such resolutions the respondent procured the widow of said Robert E. Dietz, who was entitled to the income during her life, to sign an instrument by which he gave one-quarter of the dividend to which she would be entitled to each of her children named; that, having obtained such instrument, the directors declared the dividend, and then in payment thereof issued to themselves certificates of indebtedness for $340,000. Two hundred and four thousand dollars of these certificates were allotted to Anna Dietz, as the dividend on the 600 shares of stock held in trust for her, and then transferred to her children, the defendants and respondents. By these certificates the corporation acknowledged itself indebted to the holders in the sums named, payable at a fixed time, with interest thereon, out of the future profits of the company annually.

For a second cause of action, it is alleged that on February 1, 1905, the directors passed another resolution declaring a dividend of 200 per cent. on the capital stock of the company, and also procured an assignment from the widow, who was entitled to a life interest in the stock, to her children, and then issued certificates of indebtedness to themselves in payment of that dividend.

For a third cause of action it is alleged that on February 1, 1908, another dividend was declared of 180 per cent. on the capital stock of the company. The defendants obtained another assignment from the life tenant, and issued in payment of that dividend certificates of indebtedness of $180,000 to themselves.

The situation of this company, after the issue of these certificates of indebtedness, is that it has a capital stock of 1,000 shares of which the plaintiff will be entitled to 120 shares. The defendants have by issuing these certificates of indebtedness imposed on the corporation a liability of $720,000, interest on which must be paid before any dividends can be paid on the stock, and the principal must be paid before the capital of the corporation can be divided among the stockholders; and this has been done in pursuance of a conspiracy to destroy the value of the stock of the company. I do not think that there is presented in the facts alleged in the complaint, and admitted by the demurrer, a question as to the right of a corporation to declare a dividend as representing investment of profits in property used by the corporation in its business, which the directors in good faith desire to capitalize. It is alleged and admitted that this was not done in good faith, but to destroy the capital stock held by the minority stockholders. In other words, the directors have involved the corporation in an indebtedness which would absorb its earnings and prevent the payment of dividends upon its stock. These directors, having control of the company by holding a majority of the stock in trust, to injure the minority stockholders, have issued obligations of the company to themselves under the pretense that they are declaring dividends of more than seven times the amount of the capital stock of the company. The

directors are trustees for the corporation, and all its stockholders. In the execution of such trust, they are bound to exercise the utmost good faith for the benefit of the corporation, and this obligation certainly extends to declaring dividends. Assuming that the defendants had the power to declare such dividends as were declared in this case, the question is: Did they exercise that power in good faith? If they did not, the corporation has the right to call them to account, and require them to justify their acts. The question of the right of a corporation to call its directors to account has been so fully discussed in late cases that it is not necessary to restate it. Carr v. Kimball, 153 App. Div. 825, 139 N. Y. Supp. 253; Godley v. Crandall & Godley Co., 153 App. Div. 697, 139 N. Y. Supp. 236; Pollitz v. Wabash Railroad Co., 207 N. Y. 113, 100 N. E. 721.

I think, therefore, that the judgment should be reversed with costs, and demurrers overruled, with costs, defendants to be allowed to answer over on payment of such costs.