ELIZABETH McM. GODLEY, Respondent and Appellant, *v.* CRANDALL & GODLEY COMPANY et al., Appellants and Respondents.

Stock corporations — dividends — ultra vires acts of directors of stock corporation in distributing surplus earnings among themselves and certain employee stockholders, under the guise of additional salaries — illegal discontinuance of business of corporation and transfer of business and good will thereof to new corporation composed of some of stockholders of old corporation.

1. A stockholder may not maintain an action against a corporation to recover a dividend until one has been declared. If a dividend has been declared but withheld from a stockholder, the remedy is against the corporation to compel it to set off and pay him his share of the dividends.

2. Where the directors distributed surplus earnings among themselves and certain employee stockholders under the guise of additional salaries, but on a uniform basis of the capital stock held by each and not according to the services rendered by them, such a distribution of assets is without consideration, and a stockholder who did not share in the distribution may maintain an action to compel its officers to account for the wrongful diversion of the property.

## 122        GODLEY *v.* CRANDALL & GODLEY CO.

3. The general rule is that acts done in the interest of the corporation, which are voidable, *i. e.*, not fraudulent or *ultra vires*, may be ratified by a majority of the shareholders, and that those who object must correct them within the corporation. But even majority stockholders may not for selfish purposes act in hostility to the interests of the corporation with the intention of defrauding the non-assenting stockholders.

4. Directors may appoint and fix the compensation of the ministerial officers of the corporation, but in the absence of some provision of statute, by-law or charter, the directors have no authority to vote salaries to each other as mere incidents of their office, nor for services already performed under a stipulated salary. A minority stockholder may maintain a representative action to recover salaries voted by the directors to themselves under such circumstances.

5. A majority of the stockholders of a corporation, but less than two-thirds, decided to discontinue the business and liquidate the affairs of the corporation. Some of their number organized a new corporation for the purpose of continuing the business of the old company. The court found that the decision to discontinue the business of the old corporation was made in bad faith, and that certain defendants conspired to turn over its business and good will for the purpose of excluding without compensation the plaintiff and all other stockholders similarly situated from further participating in such business; that purpose was accomplished. *Held*, that directors may not thus as against dissenting stockholders in effect terminate the existence of a corporation; that while defendants had the right to organize another corporation, and within the limits of fair trade to engage in a competing business with the old corporation, neither they nor it had the right to enter into and carry out a conspiracy with the directors of the old corporation to acquire the latter's business and good will without paying therefor, and that a payment to an officer thereof for services in thus liquidating its affairs was a fraud upon it and upon the dissenting stockholders.

*Godley* v. *Crandall & Godley Co.*, 153 App. Div. 697, modified.

(Argued May 11, 1914; decided June 9, 1914.)

CROSS-APPEALS from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered January 14, 1913, modifying and affirming as modified a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term,

The nature of the action and the facts, so far as material, are stated in the opinion.

*William Russell Osborn* and *David Bennett King* for plaintiff, respondent and appellant. The Special Term properly decreed the repayment by the defendant directors of all moneys, whether taken by themselves or paid by them to others under the false claim that such payments were salaries. (*Keyes* v. *Smith*, 183 N. Y. 376; *Kennedy* v. *Mineola, etc.*, 178 N. Y. 508; *Kelly* v. *Buffalo Savings Bank*, 180 N. Y. 171; *Peck* v. *Goodberlett*, 109 N. Y. 180; *Cudahy* v. *Rhinehart*, 133 N. Y. 248; *McGibbon* v. *Tarbox*, 205 N. Y. 271; *Bonnette* v. *Malloy*, 209 N. Y. 167; *B. S., etc., Co.* v. *D., L. & W. R. R. Co.*, 130 N. Y. 152; *Sterrett* v. *T. Nat. Bank*, 122 N. Y. 659; *Ehlé* v. *Chittenango Bank*, 24 N. Y. 548.) Salaries voted by the directors to themselves under the resolution of November 14, 1906, were *ultra vires* and illegal. (*Billings* v. *Shaw*, 209 N. Y. 265; *Butts* v. *Wood*, 37 N. Y. 317; *Metropolitan El. R. Co.* v. *Kneeland*, 120 N. Y. 134; *Sage* v. *Culver*, 147 N.Y. 246; *Erwin* v. *Nav. Co.*, 27 Fed. Rep. 625; *Jacobson* v. *B. L. Co.*, 184 N. Y. 152; *A. H. M. & M. Co.* v. *Andrews*, 120 N. Y. 58; *Pollitz* v. *W. R. R. Co.*, 207 N. Y. 113.) The court below properly held defendants liable for the value of the good will of the Crandall & Godley Company. (*Jerome* v. *Q. C. Cycle Co.*, 163 N. Y. 351; *Nat. Harrow Co.* v. *Bement & Sons*, 163 N. Y. 505; *Matteson* v. *Palmer*, 173 N. Y. 404.) It is the duty of officers and directors of a corporation to continue the corporation for the purpose and life given to it by its charter. (*Abbott* v. *A. H. R. Co.*, 33 Barb. 583; *People* v. *Ballard*, 134 N. Y. 269.) The court properly excluded conversations between the defendant Finckenstaedt and Mr. Godley, who had died. (*Flynn* v. *B. C. R. R. Co.*, 158 N. Y. 493; *Talbot* v. *Laubheim*, 188 N. Y. 421; *Pollitz* v. *Wabash R. R. Co.*, 207 N. Y. 113.) It was error for the court below to modify the judgment of Special Term by deducting the alleged

" additional salaries " paid by the directors to stock-holding employees other than themselves. (*Jacobus* v. *Brooklyn Lumber Co.*, 184 N. Y. 152.) It was error to modify the judgment of Special Term by requiring the defendants to account for only so much of the salaries voted by them to themselves as directors under the resolution of November 14, 1906, as was in excess of their former salaries. (*Butts* v. *Wood*, 37 N. Y. 317; *Jacobson* v. *Brooklyn Lumber Co.*, 184 N. Y. 152.)

*Edgar T. Brackett* and *James J. Allen* for defendants, appellants and respondents. That portion of the judgment giving to the plaintiff a recovery for the sums paid out by the defendant Crandall-Godley Company and its directors as additional to the salaries that were paid is erroneous and should be reversed. (*Hartley* v. *Pioneer Iron Works*, 181 N. Y. 73; *Rorke* v. *Thomas*, 56 N. Y. 559; *Kavanaugh* v. *Comm. Trust Co.*, 181 N. Y. 121; *Peckham* v. *Van Wagenen*, 83 N. Y. 40; *Berryman* v. *Bankers Co.*, 117 App. Div. 730; *Groh's Sons* v. *Groh*, 80 App. Div. 85.) The judgment appealed from, in so far as it holds the executors of Lyman F. Pettee, deceased, liable for the whole or any part of the salaries paid to him and his co-directors Finckenstaedt and Pfeiffer pursuant to the resolution of November 14, 1906, is erroneous and should be reversed. (Cook on Corp. [4th ed.] § 646; *Lellord* v. *O. P. & D. Co.*, 56 Atl. Rep. 254; *McNaughton* v. *Osgood*, 41 Hun, 109; *Hirsch* v. *Jones*, 115 App. Div. 156; *Leslie* v. *Lorillard*, 110 N. Y. 519; *Cont. Ins. Co.* v. *N. Y. & N. H. R. R. Co.*, 103 App. Div. 301; *Wallace* v. *R. R. Co.*, 12 Hun, 460; *Foss* v. *Harbottle*, 2 Hare, 461; *Bagshaw* v. *Eastern Union Railway*, 7 Hare, 114; 19 L. J. [Ch.] 410; *McDougal* v. *Gardner*, L. R. [1 Ch. Div.] 13; *Normandy* v. *Ind., etc., Co., Ltd.*, 97 L. T. Rep. 872.) The findings of the trial court that the discontinuance of the business was fraudulent and in bad faith is without support in any reason-

able interpretation of the evidence, and the exceptions of the defendants to those findings and to the refusals of the court to find to the contrary, constitute error which requires a reversal of those parts of the judgment which hold the defendant executors liable for the loss of the good will. (*Skinner* v. *Smith*, 134 N. Y. 240; *Gamble* v. *Queens Co. Water Co.*, 123 N. Y. 91; *Hodge* v. *U. S. Steel Corp.*, 64 N. J. Eq. 807; *Leslie* v. *Lorillard*, 110 N. Y. 519; *Continental Ins. Co.* v. *N. Y., N. H. & H. R. R. Co.*, 103 App. Div. 282; *Cont. Ins. Co.* v. *N. Y., N. H. & H. R. R. Co.*, 187 N. Y. 225; *Wallace* v. *Railroad Co.*, 12 Hun, 460; *Flynn* v. *Bklyn. City R. R. Co.*, 158 N. Y. 493.) Neither pleading nor evidence nor findings support the recovery allowed for the bill paid for legal services and the premium on the bond discharging the receiver, and that part of the judgment should be reversed. (*O'Brien* v. *Fitzgerald*, 143 N. Y. 377; *Dykman* v. *Keeney*, 154 N. Y. 483.)

MILLER, J. This is a representative action by the plaintiff as stockholder of the defendant Crandall & Godley Company to compel its officers to account for the wrongful diversion of its money and property to themselves and others. It is the typical case of a dispute arising from the incorporation of a trading partnership followed by the death or incapacity of one of the members and the adoption by the others of measures to limit the dividends of the inactive shareholder to what they conceive he ought to have. I shall consider under separate heads the objections to the judgment earnestly pressed by the learned counsel for the defendants, appellants.

1. The stock of the defendant corporation, and of its predecessor, a New Jersey corporation, was substantially all owned by the partners upon the organization of the corporation, William D. Godley, the husband of the plaintiff, and Lyman F. Pettee, the testator of the defendants, Mary E. Pettee, Harry E. Pettee and William C. Pettee.

A small amount of stock was allotted to favored employees under an arrangement by which they were permitted to pay for the same from dividends. The defendant corporation was organized in May, 1895. Said Godley became ill and incapacitated soon thereafter and died in December, 1897, the plaintiff succeeding to his ownership of the stock. The said defendants' testator succeeded Godley as president and, together with the employee stockholders, held a majority of the stock and controlled the corporation. Godley had been president and said testator vice-president of the New Jersey corporation. They had divided the earnings so that, in addition to salaries of $5,000 and $3,000 respectively equally divided between them, they and the other common stockholders had each received fifteen per cent for the year 1892, fifteen per cent for the year 1893, and thirteen per cent for the year 1894, which was credited to the stock account on the books of the company. On the 8th of July, 1896, and on the 1st of March, 1897, the directors adopted the following resolutions respectively:

" In order to show due appreciation to some of our best and trusted employees, be it *Resolved* that we make to those an increase in salary for the year 1895 an amount that we can agree upon to those we deem worthy according to their ability and service to the company, as has been the custom heretofore."

and

" Be it *Resolved* that in order to show due appreciation to some of our best and trusted employees, we make to those an annual increase in salary to continue until revoked by the Board of Directors."

Acting thereunder, they paid to themselves and the employee stockholders each year, from 1895 to 1908 inclusive, nine per cent upon the common capital stock held by each, except in the years 1906, 1907 and 1908, when said amounts were paid only to the employee stockholders. During those years the directors received additional amounts

under another resolution to be considered under the following head. Neither the plaintiff nor her husband shared in that distribution. A dividend of six per cent to all common stockholders was declared and paid each year except in 1907, when seven per cent was paid, and in 1908, when none was paid. The additional amounts of nine per cent per annum paid to themselves and to the employee stockholders were called by the directors " additional salaries." But the amounts were determined solely by the amount of stock held by the distributees and were not measured by the services performed by them for the company. They were paid without any action of the board of directors save for the two resolutions hereinbefore quoted. Said amounts were paid at the end of each year from the surplus profits and were charged on the books against profit and loss. The Special Term required the defendants who were directors to account for and pay over all of the sums thus paid out as additional salaries during the period of their several directorships. The Appellate Division modified the judgment by limiting the recovery to the sums paid to the directors themselves on the theory that they could be held accountable for increases of salaries voted to themselves but not for increases voted to mere employees. Both parties appeal from that part of the judgment. The argument of the defendants, stated with much plausibility and force, is based on the premises that the complaint alleged, and the Special Term found, that the extra amounts of nine per cent on the capital stock were paid as discriminatory dividends, and that the Appellate Division held them to be additional salaries. It is concluded from one premise that the plaintiff, not the corporation, was injured, and that her remedy is an action against the corporation to compel it to set off and pay to her her share of the dividends (see *Peckham* v. *Van Wagenen*, 83 N. Y. 40), and from the other, that the judgment is erroneous both because no such issue was presented by the pleadings and

because there is no proof that the additional salaries were not earned.

We think that some confusion of thought has resulted from the use of terms. A stockholder may not maintain an action against a corporation to recover a dividend until one has been declared. If a dividend had been declared but withheld from the plaintiff, her remedy would doubtless have been the one suggested by Judge RAPALLO in the case just cited *supra.* In the case at bar, however, no dividend was declared except the six per cent dividend paid to the plaintiff as well as to the other stockholders. There is at least some evidence to sustain the finding that the directors distributed the surplus earnings of the corporation among themselves and certain employee stockholders under the guise of additional salaries but upon the uniform basis of nine per cent of the common capital stock held by each, and not according to the services rendered the corporation by the distributees. Plainly, such a distribution of assets was without consideration and a wrong to the corporation itself, and it is immaterial that the plaintiff called the payments dividends and that the directors called them additional salaries. The facts were sufficiently pleaded to present the question, and the facts found are sufficient to sustain a recovery. However, the judgment should be modified by striking out the recovery for the years prior to 1897.

It is plain both from the complaint and the proof that the plaintiff sought to recover only the sums paid since 1897. There is a general allegation that since the organization of the defendant corporation the said defendants' testator entered into a plan with the other directors and officers, whom he controlled, and caused to be paid to himself and them various sums of money called extra salary or compensation which they illegally voted to themselves. But the specific allegation is that the said defendants' testator caused dividends amounting to fifteen per cent to paid to the employees since the year 1897, claiming that

six per cent thereof only was dividend and the balance, or nine per cent, additional salary, and that he and the other officers caused unlawfully increased salaries to be paid to themselves since the year 1897; and the prayer for relief is that the defendants be required to account for and pay over the sums paid from the year 1897 to the end of the year 1906 together with increases of salary voted for the years 1906, 1907, 1908 and 1909. Indeed, the prayer for relief was limited to the sums alleged to have been improperly paid to the officers themselves. But the plaintiff without objection proved the sums paid the employee stockholders, so the variance in that respect may be disregarded. However, the plaintiff proved under this head the payment of only $103,248 as so-called additional salaries beginning with the year 1897, and yet she was allowed to recover $125,928 and interest going back to and including the year 1895. The defendants as a part of their case, for the purpose of justifying the payments after 1897 by showing a continuous course of conduct, proved the payments made prior thereto, both by the defendant corporation and its predecessor. But there was nothing in the pleadings or the plaintiff's proof, or by way of motion or suggestion on the trial, or indeed until the findings were made by the trial judge, to warn the defendants that the plaintiff sought to recover anything except the payments made under the resolution of 1897 and after the death of her husband, when she succeeded to his stock ownership. Payments made during Godley's lifetime may possibly have stood on a different footing. The defendants say that the complaint should not be treated as amended without giving them an opportunity to plead the Statute of Limitations. The recovery demanded was for a period of more than ten years prior to the commencement of the action. The court found that the payments were concealed from the plaintiff and not discovered by her until about January, 1909. It is unnecessary now to decide whether that fact would

constitute an answer to the defense of the Statute of Limitations if pleaded. While we construe pleadings liberally and amend them to conform to the proof where no prejudice can result to the defeated party, a defendant is still entitled to some warning of the claim made by the plaintiff. A recovery should not be permitted for matters not demanded by the complaint, not proved by the plaintiff and not even requested by counsel during the trial by appropriate motion or otherwise. We conclude that the Appellate Division erred in limiting the recovery under this head to the sums paid the officers and that the Special Term erred in permitting the plaintiff to recover more than she proved. The order of the Appellate Division and the judgment of the Special Term should be modified in the respect under consideration so as to provide for the recovery of the sum of $103,248, with interest on the several sums paid, from the time of payment.

2. On November 14th, 1906, the directors, who were respectively the president, vice-president and secretary, voted to themselves and to the defendant William C. Pettee, the treasurer but not a director, increases of salary for the year 1906. Said increases to the directors were paid for that year, and for the years 1907 and 1908, and amounted in all to the sum of $42,330. The Special Term allowed a recovery for the entire salaries paid during those years. The Appellate Division properly modified the judgment by limiting the recovery to the amount of the increases. It is strenuously insisted that in the absence of proof and a finding of fraud the plaintiff is not entitled to recover even the increases of salary voted by the directors to themselves; that there is no proof or finding that the services rendered were not worth the salaries paid; that, while the action of the directors was voidable at the option of the corporation, it was not *ultra vires* or fraudulent; that the corporation, acting by a majority of its stockholders, could ratify the void-

able act; and hence that the plaintiff, a minority stockholder, could not exercise the corporation's right of disaffirmance, without proving that it should have been exercised by the corporation. It is undoubtedly the general rule that acts done in the interest of the corporation, which are voidable only, *i. e.*, not fraudulent or *ultra vires*, may be ratified by a majority of the shareholders, and that those who object must correct them within the corporation. (*Leslie* v. *Lorillard*, 110 N. Y. 519; *Gamble* v. *Queens County Water Co.*, 123 N. Y. 91; *Flynn* v. *Brooklyn City R. R. Co.*, 158 N. Y. 493; *Continental Insurance Co.* v. *N. Y. & H. R. R. Co.*, 187 N. Y. 225; *Pollitz* v. *Wabash R. R. Co.*, 207 N. Y. 113.) That rule results from the necessity that the majority must determine the policy of the corporation, with whose internal management the courts wisely refrain from interfering. Whether increases of salaries voted by the directors to themselves come within the rule may well be doubted. Only one case in this state holding that they do is cited. (*MacNaughton* v. *Osgood*, 41 Hun, 109; reversed on another point, 114 N. Y. 574.) Doubtless the directors may appoint and fix the compensation of the ministerial officers of the corporation, but the payment of salaries to themselves as mere incidents of their office is a different matter. There is authority and sound reason in support of the proposition that, in the absence of some provision of statute, by-law or charter, the directors have no authority to vote salaries to each other as mere incidents of their office (*Kelsey* v. *Sargent*, 40 Hun, 150; *Mather* v. *Eureka Mower Company*, 118 N. Y. 629; *Metropolitan Elevated Railway Co.* v. *Kneeland*, 120 N. Y. 134); and there is ample authority to sustain the right of a minority stockholder to maintain a representative action to recover salaries voted by the directors to themselves. (*Butts* v. *Wood*, 37 N. Y. 317; *Jacobson* v. *Brooklyn Lumber Co.*, 184 N. Y. 152; and see cases cited on page 163.) It is said that there was the element of actual fraud

in all of the cases relied upon by the plaintiff; but it is
plain that the fraud relied upon in the two cases just cited
consisted in the officers helping themselves to the funds of
the corporation under the guise of salaries voted by them-
selves.    The court found in this case that there was no
by-law of the corporation authorizing the directors to vote
salaries to themselves as officers.    Doubtless, the directors
of a corporation may employ one of their number to per-
form services outside of the usual duties pertaining to his
office and agree to pay him a salary therefor, and it may
be that the act would not be wholly void, though he voted
for the resolution. · The precise nature of the services
for which the increases were assumed to be voted does
not plainly appear.    The court found that the services
rendered were substantially the same after as before the
resolution of 1906, and that thereafter they discon-
tinued the nine per cent annual payments to themselves.
The increases of salary amounted to more than said
payments, but the court did not expressly find that
they were made in lieu thereof.    In this connection,
it may not be amiss to call attention to the practice,
which is becoming too common, of pleading and finding
evidentiary facts.    Of course it requires some discrimina-
tion and a due appreciation of the principles of law appli-
cable to the case to state the ultimate facts upon which
the judgment must rest; but if, instead of the one hun-
dred and sixty-three so-called findings of fact and con-
clusions of law, the few essential ultimate facts and con-
clusions of law had been found and made in this case, the
plaintiff would have encountered less danger of reversal
in this court.    The judgment must be sustained, if at all,
by the ultimate facts found or established by uncon-
tradicted evidence.    We may not choose between con-
flicting inferences arising from evidentiary facts, and the
refusal of the trial court to find a fact is not, as seems to
be supposed, the equivalent of an affirmative finding.

Among the conclusions of law there are express find-

ings of fraud. Some of them explicitly relate to the nine per cent payments of so-called "additional salaries," others may possibly be construed to relate to the increase of salaries under the resolution of 1906, although it is equally possible that they were intended to relate to the destruction of the good will, to be considered later. However one fact is found which indubitably stamps the resolution of November 14th, 1906, as fraudulent. Whatever the power of directors to vote salaries may be, they certainly had no power to vote increases of salary to themselves for services already performed under a stipulated salary. Under that resolution the directors paid to themselves an increase of $14,310 for services already performed. That constituted nothing less than a gift to themselves of corporate funds and of course was a fraud, and it was perforce of that resolution that the increases were paid in subsequent years. In view of the other findings bearing on the question of actual, as distinct from constructive, fraud, dubious as they are, we are not disposed to hold that the resolution of 1906 was fraudulent as to past services and honest as to the future. Manifestly the increases paid for all of the years rested on the same basis. The resolution was tainted with fraud and wholly void.

A majority of the stockholders, consisting of those who had received the preferential payments, voted after the commencement of this action to ratify the acts of the directors. But even majority stockholders may not for selfish purposes act in hostility to the interests of the corporation with the intention of defrauding the non-assenting stockholders. (*Gamble* v. *Queens County Water Co.*, *supra* ; *Farmers' Loan & Trust Co.* v. *N. Y. & N. Ry. Co.*, 150 N. Y. 410; *Flynn* v. *Brooklyn City R. R. Co.*, *supra* ; *Continental Securities Co.* v. *Belmont*, 206 N. Y. 7.) The recovery under this head, as modified by the Appellate Division, was proper.

3. On the 7th of January, 1909, the premises of the

corporation were destroyed by fire. A majority of the stockholders, but less than two-thirds, necessary to dissolve the corporation, decided to discontinue business and liquidate the affairs of the corporation. For his services in thus liquidating the affairs of the company the directors voted and caused to be paid to the said defendants' testator the sum of $13,750, for which sum, with interest, a recovery has been allowed. That is objected to on much the same ground as the recovery under the preceding head. There is no specific finding as to the value of his services, or that he voted for the resolution authorizing the payment to him of said sum. However, it plainly appears from the findings referred to under the next head that his services in that regard were not rendered in good faith in the interest of the corporation, but were in bad faith, and destructive of its true interest. It thus conclusively appears that the payment of compensation therefor was a fraud upon the corporation and the dissenting stockholders. The recovery of the sum thus paid was, therefore, proper.

4. After the fire the defendant Pfeiffer resigned as director of the defendant corporation, and he and the defendant William C. Pettee, the son of said testator, organized a new corporation, known as the Crandall-Pettee Company, for the purpose of continuing the business theretofore conducted by the defendant corporation. The court found that the decision to discontinue the business of the old corporation was made in bad faith, and that said testator and defendant Finckenstaedt in bad faith conspired with the defendants Pfeiffer and William C. Pettee to turn over to the Crandall-Pettee Company the business and good will of the defendant corporation for the purpose of excluding without compensation the plaintiff and all other stockholders similarly situated from further participating in such business, and that that purpose was accomplished. I need not refer to the evidentiary facts found which support that conclusion. Suffice it to say that there is evidence to support it.

It is said that the evidence established the fact to be that said testator became ill and physically incapacitated to carry on the business after the fire; that the court erred in refusing to so find, and that fraud cannot be predicated on the refusal of a sick man to imperil his life for the plaintiff's benefit. If the findings requested had been made they would not alter the case. The acts complained of were affirmative acts destructive of the true interests of the corporation, not negative acts in refusing longer to serve it. Said testator could with propriety have resigned as an officer and director of the corporation. It may be assumed that a majority of the stockholders could, each in his own interest, vote to discontinue the business. But they could not lawfully do that in bad faith for the purpose of turning its business and good will over to another corporation without compensation so as to exclude minority stockholders from participating therein.

The court found on sufficient evidence that the good will was worth $90,000. It was the duty of the directors if they decided to discontinue the business to make an honest effort to realize on the good will. Doubtless it is true, as contended, that good will cannot exist apart from an established business. But the business was not destroyed by the fire. The corporation had assets of $534,439.13, exclusive of good will. The directors did not discharge their fiduciary duties simply by realizing on and honestly accounting for the tangible assets. The business, the organization, the list of customers, the brands and trade names — everything pertaining to good will — were turned over without compensation to the new corporation. Being unable to secure the consent of a two-thirds majority of the stockholders to dissolve the corporation, the defendants accomplished their purpose by reducing the capital to $15,000 and by turning over the business and good will without compensation to a new corporation. Directors may not thus as against

dissenting stockholders in effect terminate the existence of a corporation. (*People* v. *Ballard,* 134 N. Y. 269.)

But it is objected that in any event the recovery against the defendant Pfeiffer, who had ceased to be a director, William C. Pettee, who never was a director, and the Crandall-Pettee Company was improper as neither owed any fiduciary duty to the defendant corporation. However, the recovery against them may be sustained on another theory. It is unnecessary at this day to cite authority in support of the proposition that the assets of a corporation constitute a trust fund. This must be true of intangible, as well as tangible, assets. Whoever, therefore, wrongfully appropriates such assets may be charged therefor as constructive trustees. The said defendants, Pfeiffer and Pettee, had the right to organize another corporation. It had the right within the limits of fair trade to engage in a competing business with the old corporation. But neither they nor it had the right to enter into and carry out a conspiracy with the directors of the old corporation to acquire the latter's business and good will without paying therefor.

5. Two other small items and a ruling on evidence remain to be considered.

The court found that the defendant corporation paid $6,991.71 for legal services in the defense of this action, and a recovery was allowed for that sum and for $1,000 alleged to have been paid as premium on a bond given to discharge the receiver appointed herein. There is no finding of fact that the latter sum was paid unless it be found in the conclusion of law on the subject. There is proof of a resolution authorizing the payment of said premium, but there is no proof at all that it was paid or, if it was paid, that it was not included in the said item of $6,991.71. The plaintiff made no proof at all as to the latter item. The only evidence on the subject was brought out on cross-examination of an expert account-ant and was to the effect that the books showed the pay-

ment of expenses after the fire amounting to $9,739 and that "$6,900 of it is in the legal proceedings." If there were no other objections to allowing the recovery we might assume what appears to be manifest that everybody understood that the "legal proceedings" referred to this action. However, there was no claim in the complaint for those items. Necessarily, there could have been none, as the expenses were incurred after the commencement of the action. But, in view of the manner in which the evidence was elicited, the defendants should have had some warning before they were cast in judgment that a recovery for those items was sought. There is no evidence whatever as to the one item and very slight evidence at the best as to the other. It was stated by the learned counsel for the appellants on oral argument that some of the items at least, included in the sum of $6,900, were for matters outside of the defense of this action. If seasonably warned that a recovery was sought for those items, the facts would doubtless have been developed fully. Under the circumstances we think that fairness to the defendants requires that they should have some notice of the claim made against them before the rendition of a judgment and that said items should be eliminated from the recovery without prejudice, however, to the plaintiff's right to bring a new action therefor if so advised.

It is next urged that the court erred in excluding evidence of a conversation between the defendant Finckenstaedt and said Godley prior to the organization of the defendant corporation, which it is claimed would tend to show that as president of its predecessor, the New Jersey corporation, he assented to the practice of distributing earnings as salaries. The evidence was excluded as incompetent under section 829 of the Code of Civil Procedure, and it is argued that the admissibility of the evidence is to be determined precisely as though the corporation itself were the plaintiff. Without deciding that question, it is

sufficient to say that the conversation related to the affairs of another corporation and occurred at a time when, if earnings were distributed nominally as salaries, there was no attempt at discrimination between shareholders. We do not think that in any aspect of the case the evidence, if received, could have affected the result.

We are also of the opinion that no error was committed in allowing recoveries against the defendants Fincken staedt and Pfeiffer for moneys improperly paid out while they were directors, even though the resolutions purporting to authorize such payments were adopted prior thereto.

The judgments of the Appellate Division and of the Special Term should be modified in accordance with this opinion and, as modified, affirmed, with costs to the plaintiff.

WILLARD BARTLETT, Ch. J., WERNER, HISCOCK, COLLIN, CUDDEBACK and CARDOZO, JJ., concur.

Judgment accordingly.