(174 App. Div. 48)

### KREITNER v. BURGWEGER et al.

(Supreme Court, Appellate Division, Fourth Department. July 6, 1916.)

1. CORPORATIONS ⊚⟼308(5)—OFFICERS—COMPENSATION.
   A corporation's president and treasurer, owning the majority of stock, may not, acting as a majority of a board of directors, raise their salaries as such officers, without any increase of duties.

   [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1339, 1340; Dec. Dig. ⊚⟼308(5).]'

2. CORPORATIONS ⊚⟼308(5)—OFFICERS—COMPENSATION.
   The theory of quantum meruit cannot apply to justify the increase by officers and directors of their own salaries against protest of minority directors, where the suggestion of implied promise to pay a greater sum is negatived by their express contract to accept a lesser sum.

   [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1339, 1340; Dec. Dig. ⊚⟼308(5).]

⊚⟼For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. CORPORATIONS ☞308(5)—OFFICERS—COMPENSATION.

A substantial increase in a corporation's prosperity will not support unauthorized voting of increase of their own salaries by majority of directors acting as officers.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1339, 1340 , Dec. Dig. ☞308(5).]

4. CORPORATIONS ☞307—OFFICERS—FIDUCIARY RELATIONSHIP.

Corporation directors stand in fiduciary relation to both stockholders and creditors.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1350, 1351; Dec. Dig. ☞307.]

5. CORPORATIONS ☞320(11)—OFFICERS—CONTRACTS.

An attempt by directors in control of a corporation to make a contract detrimental to the corporation between it and themselves individually is presumptively fraudulent and in bad faith.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1437; Dec. Dig. ☞320(11).]

6. CORPORATIONS ☞320(11)—OFFICERS—ACTION BETWEEN STOCKHOLDERS AND OFFICERS.

In an action for accounting by minority stockholders against directors representing majority of stock, evidence that defendants increased their own salaries, unauthorized by stockholders, that information as to expenditures was persistently refused, and that, although the capital stock was $250,000, defendants refused to increase dividends above 4 per cent., while accumulating a surplus approaching $700,000, and had used approximately $30,000 for which no account was rendered, *held* to show bad faith, requiring strict accounting.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1437; Dec. Dig. ☞320(11).]

7. CORPORATIONS ☞320(11)—OFFICERS—ACTION BETWEEN STOCKHOLDERS AND OFFICERS.

Plaintiff has fully met his burden of proof when he traces the assets of the corporation into the hands of defendant directors; and they have the burden of accounting for all corporation moneys traced into their hands.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1437; Dec. Dig. ☞320(11).]

8. CORPORATIONS ☞320(1) — STOCKHOLDERS — MINORITY STOCKHOLDERS — HEARING.

Stockholders, although holding a minority of stock, are entitled to a hearing upon question of raising salaries of directors acting as officers.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1426; Dec. Dig. ☞320(1).]

Foote, J., dissenting in part.

Appeal from Special Term, Erie County.

Suit by John Kreitner against Leonhardt Burgweger and others. From the judgment, plaintiff appeals. Modified.

Argued before KRUSE, P. J., and FOOTE, LAMBERT, MERRELL, and DE ANGELIS, JJ.

Louis L. Babcock and Rogers, Locke & Babcock, all of Buffalo, for appellant.

Daniel J. Kenefick and Lewis & Carroll, all of Buffalo, for respondents.

LAMBERT, J. In form, this action is for an accounting. It is brought by plaintiff as a stockholder of the defendant corporation, both in an individual and representative capacity. By his complaint the plaintiff charges the unlawful appropriation of property and money of the brewing company by the defendants Burgweger and Bartholomay. He attacks many transactions and seeks herein an accounting by such individual defendants and restitution to the corporation.

Since the organization of the brewing company, the defendant Burgweger has been its president. He has devoted substantially his entire time to its business. Commencing at $2,000 per year, his salary has been gradually increased until in July, 1907, he was receiving $7,000 per year. Such increases to that amount are not questioned in this action. Bartholomay, about 1903, came into the employ of the corporation as a salesman. His salary began at $3,000 but coupled with it was an agreement that, in case, under his supervision, the sales showed certain increases, his salary should be increased to $5,000. The business did show this increase, and in July, 1907, the board of directors voted the payment to him of such increased salary from October, 1903. At the same time a resolution was adopted by such board, further increasing Bartholomay's salary to $10,000 per year, and likewise increasing Mr. Burgweger's salary to the same amount. In such attempted increase in salaries lies one of the chief grounds for complaint urged by plaintiff.

At all times since its incorporation the brewing company has had a directorate of three members, and at the time of the adoption of these resolutions in July, 1907, both Bartholomay and Burgweger were members of that board, constituting a majority thereof, and their votes were essential to the adoption of the resolutions. The third director then on the board voted against such resolutions. It was conceded upon the trial that this resolution was ineffectual to increase to $10,000 the salary of each of the individual defendants, for the reason that their own votes were essential to the adoption of that measure.

It has been held by the Special Term that the increase in salary to Mr. Bartholomay to $5,000 was lawful, being predicated upon a contract lawfully made at the time of his employment and fully performed by him. The lawfulness of that contract, and the power of the corporation to make it, cannot be questioned. The determination of the court below that Bartholomay performed this contract has support in the record. The corporation has received the benefit of that contract, and must be held to have adopted and ratified it. As to such increase up to $5,000 we must sustain the Special Term.

While it is not sought upon this appeal to justify the increases to $10,000, under the resolution of July, 1907, yet it is claimed that the services performed by the defendants Burgweger and Bartholomay were of the value of such increased salaries, and that the performance of such services for the corporation made an implied promise on the part of the corporation to pay therefor the reasonable value of such services. This contention presents the question of the application of the so-called quantum meruit rule to the facts in this case.

[1-3] Starting with the premise of invalidity of the resolution of

July, 1907, we must admeasure the rights of these parties as though that resolution had not been adopted. Then we have these men performing certain specific duties under a contract whereby they were to receive therefor a stated and contracted compensation. Without other action than their own, without ratification from the stockholders, and without (so far as this record shows) any increase in or modification of their duties, they seek to take substantial increases in salary from the assets of this corporation against the protest of the minority director. Such a situation leaves no room for the application of the quantum meruit rule. The suggestion of an implied promise to pay the greater sum is negatived by the existence of the specific contract upon their part to accept a lesser sum. The existence of a specific contract cannot be reconciled with that of an implied contract involving the same elements. The two conceptions are antagonistic, and all services performed while the specific contract exists must be conclusively presumed to have been performed thereunder. Especially is this true when such attempted increase was unattended by any increase in duties. Nor is added prosperity on the part of the corporation available as an argument in behalf of these defendants. Their retention of office obligated them to produce this result, if possible, and in so doing they but performed an obvious duty and one fully within the contemplation of their employment.

That officers of a corporation may not, by action on their own part, increase their own compensation without a corresponding increase in duties, is fully sustained by Jacobson v. Brooklyn Lumber Co., 184 N. Y. 152, 76 N. E. 1075. In that case an increase in salaries was voted without additional duties or services. The Court of Appeals there unanimously held such increases to be unlawful, even though attended by increased assets and better financial standing on the part of the corporation.

And still stronger is the case of Pew v. Gloucester National Bank, 130 Mass. 391. In that case the president of the bank was receiving a stated salary of $400 per year. The bank undertook extensive alterations to its building, and to the supervision of such the president devoted substantially all of his time. This obviated the necessity for employment of a superintendent. The services thus rendered were valuable. They were beyond the ordinary duties connected with his office. Yet, in an action brought by him upon the theory of implied promise to compensate therefor, it was held that the existence of the express contract to pay him $400 fully negatived the existence of an implied contract to pay him a greater sum, and recovery above $400 was denied.

There are a few decisions where increases in salaries have been sustained by the courts under circumstances somewhat similar to those here. But in each of such, so far as disclosed by a careful examination, there will be found present some other and controlling element. Our attention is directed to Murray v. Smith, 166 App. Div. 528, 152 N. Y. Supp. 102, as being one of such cases. That case is clearly distinguishable, in that the decision therein sustaining the increase in salaries is placed squarely upon the acquiescence of the corporation

in such increase. The facts in our case do not permit the adoption of any theory of acquiescence. Such increases have been consistently and vigorously opposed.

We are further cited to MacNaughton v. Osgood, 41 Hun, 109, as being antagonistic to some of the views herein expressed. That case was reversed in 114 N. Y. 574, 21 N. E. 1044. Further, as is pointed out in Godley v. Crandall & Godley Co., 212 N. Y. 121, 105 N. E. 818, L. R. A. 1915D, 632, that case stands alone, among the decisions of this state, for the doctrines therein enunciated. In view of its reversal, and of its lack of support in other decisions, we do not feel compelled to follow it.

[4-6] This record presents no equitable reasons for modification of the strict rule of accountability existing in our law as against directors of a corporation. Those officials stand in a fiduciary relation to both stockholders and creditors. Assets of the company coming into their possession they hold as trustees, and they are to be held to the strictest rule of accountability to the beneficiaries of that trust. It is in recognition of this status of directors that our courts have uniformly held that the attempt by directors, in control of a corporation, to contract for such corporation with themselves individually, to their benefit and to the detriment of the corporation, is presumptively fraudulent and in bad faith. Billings v. Shaw, 209 N. Y. 265, 103 N. E. 142; Carr v. Kimball, 153 App. Div. 839, 139 N. Y. Supp. 253; Sage v. Culver, 147 N. Y. 241, 41 N. E. 513; Pollitz v. Wabash R. R. Co., 207 N. Y. 113–124, 100 N. E. 721.

[7] And this presumption of bad faith is further accentuated by the proof in this record. These majority directors have not evidenced the slightest good faith toward the minority stockholders. Every effort by a minority director to protest against their illegal actions and unlawful withdrawal of assets from the corporation has been met with dismissal from the board and the election of a successor friendly to these defendants. Acquisition of detailed information of the internal affairs of this corporation was persistently refused, and only procured by resort to mandamus. Although the total capitalization of this company is but $250,000, and its stock has been paying but 4 per cent., these two majority directors have consistently refused to increase the dividends thereon, while accumulating a surplus approaching $700,-000. Under their management and control, they have withdrawn from the assets of this concern approximately $30,000, for which they are wholly unable to account beyond their general and evasive statement that it was expended for the corporation. Each has monthly withdrawn hundreds of dollars for which no accounting has been made, and the few instances where the expenditure of the money is explained at all but turns suspicion upon the disposition made of that portion unaccounted for. Large contributions in support of excise measures in a political campaign, valuable presents to customers and bartenders, ticket admissions to a prize fight, and entertainment of various and similar character, certainly do not approach the standard of lawful expenditure of trust moneys which justifies a court of equity in saying that such expenditures were lawful.

And in further defiance of the protesting stockholders, since the commencement of the action, these defendants have voted still further and substantial increase in the salary of the defendant Burgweger. In fact, these defendants have frequently taken the position that, by reason of their holdings in and control of the corporation, they were relieved from the obligation to account, or heed the protests of the minority.

This action is for accounting by persons in a trust capacity, and the plaintiff has fully met his burden of proof when he traces the assets of the concern into their hands. The clear duty is then imposed upon them of fully accounting for all such trust moneys, and they can receive credit upon such accounting only for such sums as they definitely show they have expended for a lawful purpose. Upon no theory of law or equity can they be credited with any moneys for which they cannot account.

[8] It is suggested that uniform application of the rule prohibiting majority directors from increasing their own salaries may prohibit meritorious increase in a case where the vote of such majority is essential to the adoption of a resolution for such increase. Such a conclusion does not necessarily follow. A corporation is owned by its stockholders. The will of the majority of the stock directs its destinies. For reasons of business expediency, certain powers are delegated to the directors. But all of such powers emanate from the holders of the stock. And when, as in this instance, by reason of their personal interest the directors are precluded from exercising some of such delegated powers, then, of necessity, such power of action reverts to the source from which it came. It is urged, however, that in this instance it would have been futile to give a hearing to the minority stockholders, inasmuch as the defendants held a majority of the stock. Whether that is so or not, they had a legal right to participate in the decision of a question thus vital to the corporation. This they were denied. The course of action by the defendants clearly demonstrates that it was their purpose, not only to deny a hearing to the minority owners of the corporation, but in defiance of the protest of their representative on the directorate to enforce payment of increased salaries in disregard of law. It is not necessary to follow this subject further. Bad faith is clearly shown. Their action was illegal.

Further suggestion is made that the resolution of July, 1907, although invalid as affecting such increase in salaries, may be accorded effect as evidencing notice from the majority of directors of a termination of their former contractual status, and thus the elimination of all obstacles to the application of the quantum meruit rule. Such was not the purpose or object of this resolution, and, even if it was, such could not be its effect. These men could not, by their own acts, unratified by the corporation, create between themselves and the corporation they represent any different contractual status in relation to their management of property in their hands as trustees.

The conclusions reached necessitate further accounting in this action, and such should be had before a referee appointed for that purpose. Payments of salary to these two officials, over and above those

salaries effective just prior to the adoption of the resolution of July, 1907, should be disallowed, except the increase to Mr. Bartholomay, up to $5,000. Upon such accounting, the defendants Burgweger and Bartholomay must be disallowed all sums shown to be received by them for which they do not render accounting showing lawful disbursement thereof.

The judgment appealed from should be modified, by striking therefrom all the provisions thereof, except those which adjudge a recovery against the defendants Burgweger and Bartholomay of $23,884.49, and against the defendant Burgweger of $1,273.83, and further modifying such judgment by making same interlocutory only, the amounts of such recoveries to be included in the final judgment herein. Such judgment should be further modified by embodying therein provision remitting the case to Special Term for the accounting indicated in the foregoing opinion, such accounting to be had by way of reference. Conclusions of law 3, 4, 5, and 9, as found by the Special Term, should be reversed.

In view of the lack of good faith on the part of the individual defendants, costs of this appeal and of the trial heretofore had herein should be awarded the plaintiff, against the defendants Burgweger and Bartholomay.

MERRELL and DE ANGELIS, JJ., concur.

KRUSE, P. J. (concurring). There is a notion quite prevalent that the majority owners of a stock corporation have an absolute right to manage the business of the corporation as they see fit. That is not so. The directors of a corporation are quasi trustees for all of the stockholders, and it is their duty to manage its business for the best interests of the corporation and all of its stockholders, and where they act in bad faith in managing its affairs, and in the interest of a majority of the stockholders and to the detriment of the minority stockholders, such conduct should be taken into account in determining the question of their compensation for service. It frequently happens that trustees are withheld any compensation for their services where they are derelict in their duties. This rule has often been applied to executors, receivers, and other trustees. We had occasion not long ago to withhold fees from a receiver who had been unfaithful to his trust. People v. State Bank of Forestville, 170 App. Div. 937, 154 N. Y. Supp. 1138.

Not only have the controlling officers here voted to increase their salary over the protests of the minority, and failed to furnish an account of the moneys which they claim to have spent, but they have refused to increase the dividends, without any apparent good reason, as it seems to me, thus keeping in their control a large surplus. It seems to have been the deliberate policy of the majority directors to ignore the minority entirely, and the claim, which is made. that it has been their purpose to freeze out the minority, is by no means without some foundation. I think, if these controlling officers are allowed salaries as stated in the prevailing opinion, they may consider themselves fortunate.

FOOTE, J. (dissenting in part).  I agree that defendants Burgweger and Bartholomay should be required to refund to the corporation all moneys drawn by them from its treasury for so-called entertaining and traveling expenses which they have not accounted for, except such amount as, upon accounting, they are able to show is proper disbursement in the interest of the company's business, and the particulars of each item so expended so far as may be necessary to enable the court to determine the items of such expenditure which were properly made.  I do not think they should be allowed on such accounting for moneys which they claim to have expended·in the interest of the company's business, where they are unable to show when and to whom the money was paid and for what purpose.  These officers should, I think, be held in duty bound to follow the same business method of reporting and accounting for the expenditures of the company's money as they were in the habit of requiring from the company's employés over whom they had supervision.

I am not able to concur, however, in the views of the majority of the court to the effect that these defendants must return to the corporation all the money drawn by them as increased salaries since July, 1907.  The defendants Burgweger and Bartholomay together owned and controlled a majority of the shares of the company.  They also constitute a majority of the board of directors, which has only three members.  They are, and for many years have been, the acting managers of the company's business; the defendant Burgweger as president and general manager, and the defendant Bartholomay as vice president, treasurer, and manager and salesman for the company's shipping trade outside of Buffalo.  They each devote all their time to the business of the company, which under their management has been prosperous and successful, resulting in the accumulation of a surplus of about $700,000.  At the time of the organization of the company in 1892 the salaries of the officers were fixed by resolution of the board at $3,000 per year each.  After the first year, and until 1897, during which time the company was in financial difficulties, the president, Mr. Burgweger, voluntarily reduced his salary to $2,000.  Subsequently his salary was increased by consent of the directors, without any formal resolution, first to $4,000, then to $5,000, and later to $6,000, which was the sum he was receiving in the year 1907.  Mr. Bartholomay, during the first year of his employment, in 1902, received $3,000, with a promise that his salary would be increased to $5,000 if he made a certain increase in the volume of the company's shipping business, which he did.  He continued, however, to draw at the rate of $3,000 per year until July, 1907.  A directors' meeting was held on July 1, 1907, at which resolutions were adopted increasing the salary of Mr. Burgweger to $10,000, and of Mr. Bartholomay to $10,000, and giving to Mr. Bartholomay the increased salary which had been promised him of $5,000 from 1903 to 1907.  These resolutions were adopted by the vote of Messrs. Burgweger and Bartholomay.  The third member of the board, who was the treasurer and attorney of the company and a friend and personal attorney of Mr. Kreitner, voted in the negative, though expressing his willingness to vote for an increase to Mr. Burg-

weger up to $8,000. Thereafter the defendants drew salaries at the increased rate authorized by these resolutions until shortly after the commencement of this action, in March, 1910, when the salary of the defendant Burgweger was further increased to $12,000, which amount he has since drawn. At the next annual meeting the dissenting director was not re-elected, and his place has since been filled by persons friendly to the interest of the defendants and having no substantial interest in the company.

The trial court has found that the salary voted to the defendant Burgweger in 1907 and 1910 was fair and reasonable, and not more than the fair value of the services he rendered to the company, but as to the salary voted to the defendant Bartholomay that it was in excess of the fair value of his services, and that such services were of the value of $8,000. These findings were made upon the testimony of apparently disinterested witnesses familiar with the value of such services, and their testimony was wholly uncontradicted; plaintiff calling no witnesses upon the subject, but relying entirely upon the legal invalidity of the resolutions under which the salaries were paid.

Under these circumstances, I do not think plaintiff should be allowed in this equity action to compel defendants to restore to the corporation all the moneys received by them as increased salaries since the resolutions of July, 1907. On that subject I agree with the views expressed in the opinion at Special Term. The case would be different if there were findings that the amounts paid as salaries were not fair and just for the services rendered, or that the corporation could have procured the work to be done for less, or that defendant had been guilty of some bad faith. Not only are there no such findings, but none were requested by plaintiff in the proposed findings submitted to the trial court.

Plaintiff's reliance, as shown by the findings he asked the court to make, was upon the legal invalidity of the resolutions of the board to increase the salaries. I agree that those resolutions were not, of themselves, sufficient to increase the salaries. They were voidable, at the election of the company or any of its stockholders. If not so avoided, they were binding upon defendants, and estopped them from claiming any greater compensation. If avoided by the company, I do not think the effect was to limit the compensation to what defendants had been receiving the year before. That amount had not been fixed by any resolution; in fact, there was no previous resolution on the subject of salaries, except the one adopted on the organization in 1892, which fixed the salaries at $3,000. It was understood and expected by all that defendants should receive fair compensation for their services. The services were, for the most part, outside their duties as officers and directors. All the stockholders, including plaintiff, acquiesced in the several increases of Burgweger's salary up to $6,000, the amount he was receiving prior to July, 1907, though they were all made without any formal resolution of the board.

Plaintiff does not question these increases in this action, but relies wholly upon the illegality of the resolution of July, 1907. If defend-

ants and all the stockholders understood and expected that defendants should receive adequate salaries, and if there is no legal method by which the board can determine what are adequate salaries, because the members of the board have a personal interest to serve, then defendants must have a remedy at law to recover the fair value of their services. It cannot be that they were concluded in 1907 and subsequent years by the amount they voluntarily accepted in 1906. Such acceptance did not make a contract for the future. If the resolutions of July, 1907, did not fix the salaries thereafter, then they have not been fixed at all. Those resolutions do show that defendants were not willing to continue at the same salaries and that they claimed an increase. I see no ground for holding them bound to accept the previous salaries, because the resolutions did not bind the corporation to the amounts there stated. Under these circumstances, I think defendants could have maintained an action against the company to recover the fair value of their services. See Bagley v. Carthage, Watertown & Sacket Harbor R. R. Co., 165 N. Y. 179, 58 N. E. 895, and cases there cited. In effect they have been permitted to so recover in this action.

Where, as here, the majority stockholders are themselves the officers and directors, and at the same time the active managers, they must of necessity, in the first instance, fix their own compensation as managers. It is not ordinarily a question for the stockholders until the directors have acted, and where the same men who constitute the board of directors also control the majority of the stock, and have as directors fixed their own salaries necessarily by their own votes, I think they should be held in equity to have consented as stockholders for the stock which they control. At any rate a majority of the stockholders are in this action in the attitude of insisting that the salaries as fixed by the resolutions of the board should stand, and I see nothing to be gained by referring the matter now to a stockholders' meeting for ratification. As a majority of the stock is controlled by defendants, they could not, as stockholders, effectually ratify, as against the minority, action of the directors fixing unfair and excessive salaries for themselves. That would be a manifest fraud upon the minority and could not prevail. See Godley v. Crandall & Godley Mfg. Co., 212 N. Y. 121, and cases cited bottom page 133, 105 N. E. 818, L. R. A. 1915D, 632.

So ultimately the courts must settle the controversy between these parties, and determine the limits beyond which defendants may not go in the amount they vote to themselves for salaries, even after they have ratified such vote in stockholders' meeting. The question may as well be determined now. Such seems to be the practice in similar cases in New Jersey. See Raynolds v. Diamond Mills Paper Co., 69 N. J. Eq. 299, 60 Atl. 941; Lillard v. Oil, Paint & Drug Co., 70 N. J. Eq. 197, 56 Atl. 254, 58 Atl. 188. If defendants may recover of the corporation the fair value of their services, circuity of action will be avoided by allowing them to retain what they have received up to what that value has been found to be. Plaintiff seeks equity, and he should be required to permit equity to be done to defendants.

This case should be distinguished from Godley v. Crandall & Godley Co., supra, and others, where directors have voted themselves salaries as mere incidents of their office.

I think the judgment should be modified as above indicated, and, as modified, affirmed.