Abraham N. Geller, J.
This is an action brought by the trustees in bankruptcy of Credit Industrial Corporation (CIC) against two of its officers and directors, Jacobs and Gnstin, and two partnerships of which they were the sole partners. The partnerships having subsequently gone into bankruptcy, the action as against those entities were severed at the trial.
The claim is based upon admitted withdrawals from CIC to said partnerships totaling $1,458,591.69 for the period from October 1, 1962 to April 9, 1963. Defendants’ attorneys have not disputed their liability for said amount and offered plaintiffs a money judgment therefor.
Plaintiffs have requested in their prayer for relief a provision in the judgment directing the defendants to pay said sum with interest. Such a judgment would be the basis for a subsequent application to the court to enforce it by contempt proceeding's. To warrant inclusion of such direction there would have to be a finding and recital therein that defendants are being required to pay said sum for a willful default or dereliction of duty while acting in a fiduciary relationship (CPLK. 5105, subd. 2; derived from Civ. Prac. Act, § 505, subd. 5). That is the only real issue in the case.
Although contesting that issue through their attorneys with presentation of some proof together with various technical affirmative defenses, defendants did not appear to testify at the trial. But the facts as to their mode of operation and acts were sufficiently developed on the basis of documents executed by them in the bankruptcy proceeding, their examinations in such proceeding, the pertinent records of CIC, and testimony given by persons connected with CIC.
CIC was in the business of making loans on various kinds of ventures, receiving security or collateral of some kind, and charging, of course, interest. The very substantial withdrawals here involved were evidenced by no document, were not secured by collateral of any kind and were without interest charges.
Jacobs and Gnstin, in addition to being the accountants for CIC, were employed by it at a salary on a permanent basis in connection with its loan operations. They were substantial stockholders as well as officers and directors. They had authority to sign checks on its behalf.
Beginning in 1959 they withdrew moneys from CIC by checks payable to their wholly-owned partnerships. At no time did they inform or consult with any of the other directors, officers or stockholders concerning such withdrawals. Moneys so withdrawn prior to the end of each fiscal year were replaced, temporarily by moneys obtained by the partnerships from another *992 lending company, of which Jacobs and Gustin were the accountants. Then, with the beginning of the new fiscal year, the process of withdrawals from CIC to the partnerships with return of the funds conveniently obtained from the other lending company was resumed. The general ledger of CIC was kept at their accounting offices and these withdrawals were entered, there under “Loans and Exchanges” and the bookkeeping result of defendants’ manipulations would reveal no outstanding amount as of the end of each fiscal year. It is clear that these withdrawals were not handled in accordance with CIC’s procedures as loans, nor as exchanges. When CIC went into bankruptcy, there was outstanding unpaid this large sum of $1,458,591.69 for withdrawals from October 1, 1962 to April 9, 1963 represented by 53 of CIC’s checks payable to the two partnerships, 51 signed by Jacobs and two by employees at his request.
The assets of the partnerships were wholly insufficient to meet this liability and they have now gone into bankruptcy. It appears that Jacobs and Gustin used a .substantial portion of the withdrawn sums to purchase stock control of CIC and also made a number of bad investments through their partnerships.
While Jacobs appears to have been the more active participant in these transactions, Gustin’s own testimony in the bankruptcy proceedings shows that he knew of and participated in these withdrawals from 1959 on to his partnerships, although he claimed that he did not know until recently the exact mechanics of the exchange procedure by which the withdrawals were disguised for bookkeeping purposes.
There can be no question as to these substantial and disguised withdrawals constituting a willful default or dereliction of duty by Jacobs and Gustin as officers and directors of CIC. While admitting their liability for a money judgment, their attorneys would have the court deny any other relief because the moneys were not received by them but by their two partnerships (which, clearly, is a distinction without a difference) and because plaintiffs have not traced the moneys as a specific or earmarked fund (which, as noted below, no longer is a requirement for a direction to pay over as a predicate for contempt). The basis for granting relief beyond a mere judgment at law lies in the violation of their trust toward CIC, its stockholders and creditors.
Our courts have long recognized the fiduciary nature of the relationship of a corporate officer or director. In Kreitner v. Burgweger (174 App. Div. 48, 52) the court stated: “Those officials stand in a fiduciary relation to both stockholders and *993 creditors. Assets of the company coming into their possession they hold as trustees and they are to be held to the strictest rule of accountability to the beneficiaries of that trust. It is in recognition of this status of directors that our courts have uniformly held that the attempt by directors in control of a corporation to contract for such corporation with themselves individually, to their benefit, and to the detriment of the corporation, is presumptively fraudulent and in bad faith.”
When the Judicial Council recommended in 1947 (Thirteenth Annual Report, pp. 242-246) that section 505 of the Civil Practice Act be amended by adding a new subdivision 5 to permit punishment of a trustee or “ person acting in a fiduciary relationship ’ ’ for contempt for a willful default or dereliction of duty, even thoug’h the judgment is enforcible by execution, it included a director of a corporation as a specific illustration of a person acting in a fiduciary relationship, stating (p. 244) that his relationship to the stockholders of the corporation “ is essentially that of trustee and cestui que tnest,” citing cases. It recommended that the new subdivision be couched in broad and unrestricted general terms without specific description of fiduciaries so that it should be deemed applicable in any situation involving a fiduciary relationship. Its survey of prior decisional law led it to conclude that because of the absence of statutory power of the courts, the New York decisions demonstrated various inconsistencies. Among the decisions discussed was Nelson v. Hirsch (264 N. Y. 316), upon which defendants rely. It stated (p. 245): “ The reasoning used in this case, ‘ the earmarked or specific fund required to be paid over, ’ has been used in subsequent oases although there is no statutory requirement in this connection.” It is quite clear that it was intended to eliminate any such requirement so long as a willful default or dereliction of duty by a fiduciary was found by the court.
Subsequently, in Pieper v. Renke (4 N Y 2d 410) wherein a mother was suing her daughter with respect to funds turned over to her for a specific purpose, the court cited the new subdivision and held that plaintiff was entitled to a judgment requiring defendant to pay the money misappropriated which would be the basis for enforcing it by contempt proceedings; and that the judgment should include a recital that defendant had willfully breached her fiduciary duty in converting the funds turned over to her as trustee and a provision requiring her to pay said-sum. In Gluck & Co. v. Tankel (12 A D 2d 339) the court affirmed a judgment in an action involving joint venturers which included a direction to defendant to pay plaintiff the *994 amount adjudged. In Matter of Avalon East v. Monaghan (43 Misc 2d 401, 405-407), this court similarly held the subdivision applicable to an escrowee.
In Gluck & Co. v. Tankel (supra, p. 346) it was pointed out that there would have to he a showing of a willful default or dereliction of duty to authorize such a recital in the judgment, but that no good reason existed to exclude partners or joint venturers from the scope of the statute. The same reasoning applies to corporate officers and directors. It should also he noted, as suggested in Gluck, that it is still discretionary with the court whether and upon what terms contempt will he adjudged on the subsequent application when properly brought before the court.
All of the affirmative defenses are stricken on plaintiffs’ motion. None of them is of any effect with regard to the relief limited on the trial by plaintiffs and herein granted.
Plaintiffs are accordingly entitled to judgment against defendants Jacobs and (Justin for the sum of $1,458,591.69, with interest from April 9, 1963, said judgment to include a recital that said defendants acting in a fiduciary relationship committed a willful default or dereliction of duty and a provision directing them to pay said sum.